## The Young America.[1]

## Gallagher v. The Young America.

### (Circuit Court, S. D. New York. 1887.)

1. Towage—Stranding of Tow—Negligence of Tug—Liability.

The tug Y. A., while towing a flotilla of canal-boats, among which was libelant's boat, inward bound, through the Narrows, met an ice-field floating on the flood-tide, which caught the tug and tow on the starboard side, and swept them in towards Staten island, so that libelant's boat struck upon the shore rocks, and subsequently became nearly a total loss. *Held*, on the evidence, that the stranding was not caused by negligence on the part of the tug.

2. Same—Leaving Tow After Stranding.

After the accident, the tug W., a helper of the Y. A., detached libelant's boat from the flotilla, and beached her at a safe place. Subsequently the W., with the acquiescence of the libelant, and with him on board, came to New York for assistance, leaving no one in charge of the boat. On their return the boat was found in possession of a local wreck-master, under color of authority, who refused to yield her up to the W. and her wrecking party, and subsequently took out the coal, cut up the boat and sold her as old wood. There was no allegation in the libel of negligence on the part of the Y. A. after the stranding. *Held*, that there was no liability on the part of the tug for damages arising after the stranding, (1) because the absence of a charge in the libel of negligence, if it did not preclude the court from permitting a recovery on that ground, tended to show the libelant himself did not consider the tug negligent in that regard; (2) because the damages arising from the acts of the wreck-master were not a sequence fairly to be anticipated from the act of the W. in leaving the boat with no one on board; (3) because the libelant acquiesced in the departure of the W., and went with her, whereas, if any one was required to remain in charge of the boat, he should have remained himself.

*Henry G. Ward*, for claimants.
*Josiah Hyland*, for libelant.

Wallace, J. The libelant was the owner of the canal-boat Beekley, which, while in a flotilla of 24 canal-boats in tow of the tug Young America, struck upon the rocks on the Staten island shore in the Narrows, near Fort Wadsworth, and subsequently became nearly a total loss. The libel, filed against the tug to recover damages for the loss, alleges negligence on the part of the tug by reason of not keeping the tow further out in the channel, and away from the Staten island shore, and by reason of not keeping a proper lookout, and not having on board the tug a competent and skillful pilot. No other acts of negligence on the part of those in charge of the tug are alleged. The answer of the tug alleges that on reaching the Narrows she encountered an ice-field, which came floating on the flood-tide from the lower bay, and caught the tug and tow on the starboard side, and swept them towards the Staten island shore; that the tug Winnie, which was assisting the tug Young America as a helper, attempted to break the ice-field, and every effort was made to prevent the setting of the tug and tow towards the shore, but without avail; and the result was that libelant's boat touched the shore,

[1] Reversing, 26 Fed. Rep. 174.

and the tug Winnie took her out of the tow, and towed her to the beach at. Vanderbilt's landing.

By the decree of the district court the damages for the loss of the Beekley were divided between the libelant and the tug. The district judge was of the opinion that the tug was free from negligence as to the acts alleged in the libel, and that, without her fault, the tow was crowded towards the shore by the ice, substantially as stated in the answer; but he was also of the opinion that the tug was in fault because of subsequent acts of negligence. The owners of the tug have appealed from this decree, and by stipulation it has been agreed that the cause may be considered now as though the libelant had also appealed.

The acts of negligence on the part of the tug charged in the libel are not established by the proof by a preponderance of evidence, but, on the contrary, the proofs substantiate the averments of the answer, and show quite satisfactorily that the flotilla was crowded by the ice driven against it by the flood-tide, so that the boats on the port side were brought into too close proximity to the Staten island shore, notwithstanding the exercise of all seasonable and proper efforts on the part of the tug to discharge her duty. The case upon this issue turns almost wholly upon the credibility of the witnesses for the respective parties. The witnesses for the tug are more in number than those for the libelant, and most of them had better opportunities for observing the situation, and a greater interest in doing so, than did the witnesses produced by the libelant. Although some of the witnesses may be mistaken, and may testify erroneously to what they believe to be true, many, and a greater number, testify so explicitly about facts with regard to which they cannot be mistaken that what they state is either true, or is designedly false and fabricated. Among the latter are those who were in charge of the tug Winnie, and who. testify that that tug went around the flotilla two or three times, trying to break up the ice; but that it closed up as fast as it was broken, and could not be resisted by the best efforts of the Young America and of the Winnie. The case, as to this issue, may be properly left upon the considerations stated in the opinion of the district judge. Even were the case much stronger for the libelant, as the witnesses were examined in the presence of the district judge, his judgment of their intelligence and honesty should not be disturbed. The argument for the libelant respecting the condition of the tide, based upon calculations from the nautical almanac, has not been overlooked, nor the fact, upon which the libelant also relies, that the boats on the starboard side of the flotilla were not apparently injured by contact with the ice. The argument as to the state of the tide is not sustained by the reference to the nautical almanac, because it would seem from the calculations that it should have been high water at the place of the accident about the time when the accident occurred; and, as was remarked in the opinion of the district judge, the evidence as to the precise time of the accident is not so certain as to admit of reliance upon the arguments with respect to a change of the tide. The fact that the starboard boats of the tow did not exhibit any marked indications of injury from ice is not necessarily in-

consistent with the theory of the answer. The ice was not driven with violence against the boats, but was carried gradually against them, and the flotilla was in very slow motion. It was broken up also by the Winnie. What effect it would have upon the boats, and what indications they would present of its contact, are wholly matters of conjecture. The issue is one which must be resolved wholly upon the credibility of the witnesses.

The proofs show that after the libelant's boat struck upon the rocks the tug Winnie detached her from the flotilla, and beached her at a safe and proper place. The libelant himself left his boat, and came aboard the Winnie. After the canal-boat was beached, the Winnie remained by her all night. The master and crew of the Winnie used all reasonable efforts to raise the canal-boat, but their pumps froze. Before they could resume pumping, the tide rose, and they then concluded to go to New York city, and obtain help. This was in the morning after the accident. The libelant went with them, and acquiesced in what was proposed, or did not dissent. The tug Raritan was procured, and about noon of that day proceeded to Vanderbilt's landing, the libelant with her, accompanied by the wrecking scow Dunderberg, to pump out the libelant's boat. When they reached Vanderbilt's landing they found the canal-boat in possession of several men, who claimed to be acting under the authority of the wreck-master of Richmond county. Soon after the wreck-master himself appeared. These persons would not permit those in charge of the Raritan or the Dunderberg to go on board the canal-boat, or interfere in any way with their possession and control; and by threats of violence drove them away. At this time the captain of the Raritan asked the libelant to make known the facts, and that he was the owner of the canal-boat, to the wreck-master, but the libelant refused to do so. According to the testimony of the libelant, the wreck-master, or those under him, took the coal out of the canal-boat, cut her to pieces, and sold her for old wood, after letting her lie so long in the water that she was badly knocked to pieces.

The statutes of this state (1 Rev. St. *c.* 20, tit. 12) authorize the wreck-master of any county in which any wrecked property shall be found, when no owner or other person entitled to the possession of such property shall appear, to pursue all necessary measures for securing and saving of such property, to take possession thereof, and to keep the same in some safe place to answer the claims of such persons as may thereafter appear entitled thereto, upon the payment of a reasonable salvage and necessary expenses. It is unnecessary to say that such ruffianly conduct as, according to the proofs, characterized the detention of the libelant's boat, rendered the wreck-master and his rabble trespassers *ab initio*. They were undoubtedly aware that the Raritan and Dunderberg had come upon a legitimate errand, and represented the owner of the canal-boat; otherwise they would not have resorted to the brandishing of revolvers, and threats of violence, before permitting any explanation, or attempting to ascertain why the vessels had come.

The learned district judge was of the opinion that it was the duty of

the tug, before leaving the libelant's boat, to have made all necessary arrangements to prevent her from falling into the hands of third persons under color of authority; and because this was not done, and because the libelant's loss was greatly increased by the act of the wreck-master and his subordinates, and because the amount of the loss by reason of the original injury, and that which accrued in consequence of the acts of the wreck-master, could not be ascertained, he held the damages should be divided.

The general proposition that a tug whose tow is injured or disabled during the towage service, although without fault on the part of the tug, must use reasonable diligence to assist her tow, and shield her from additional injury, may be assumed as correct law, without discussion. Nor need it be now questioned that the tug, when her tow becomes disabled, is under obligation to do all that is reasonably within her power, according to the particular circumstances of the occasion and situation, to complete the towage service, or, if this is impracticable, to carry her tow to a place of safety when this can be done. All this was done in the present case, but the tug was condemned to bear half of the libelant's loss because after her consort, the Winnie, had brought the tow to the safest practicable place, and had used her best efforts to raise the tow, and provide for her ultimate safety, the Winnie temporarily left her to obtain more efficient assistance, and did not leave some person on board or at hand to protect her. So far as appears, there was nothing in the situation of the libelant's boat, with regard to exposure to the elements at the time she was left by the Winnie, which rendered it necessary that any person should remain with her; nor do the proofs show that there was any unreasonable delay on the part of the Winnie in procuring assistance, and sending the Raritan and Dunderberg to the relief of the canal-boat.

If the tug is to be held at all, it is because she failed to anticipate that the libelant's boat would be seized as a wreck, and take necessary precautions to avert such a contingency. There are several difficulties in the way of the libelant's recovery against the tug upon such a theory. It is to be observed that no fault or breach of duty in this respect on the part of the tug is charged in the libel, and the proofs were not addressed by either party to the issue whether the tug was negligent in leaving the canal-boat without a guard, under the circumstances. Consequently, and as might be expected, the proofs are not full, but, on the contrary, are exceedingly meager, with respect to the situation and circumstances of the canal-boat at the time the Winnie left her to obtain further assistance. The proofs do not disclose satisfactorily whether the circumstances were not of themselves adequate notice that the libelant's boat was not an abandoned wreck. It would seem that she had been brought to a safe place, where she was not in immediate danger from the elements, and, for aught that appears, she was left in a situation which would sufficiently indicate to all who saw her that she had been towed there as a place of temporary safety until necessary assistance to raise her could be obtained. If, in the absence of any allegations in the libel charging the

tug with negligence in leaving the canal-boat after she had been beached, it is not the duty of the court to refuse to consider whether there can be any recovery upon this ground, (*McKinlay* v. *Morrish*, 21 How. 343,) the omission is certainly cogent to negative the inference that the libelant himself considered the tug negligent in this behalf. *The Clement*, 2 Curt. 363. But the case in this respect does not rest upon inference merely, because the libelant himself was consulted by the captain of the Winnie about leaving the tow, and going to New York for assistance, and acquiesced in what was proposed, without making a suggestion that any person should be left in charge of her during the interval.

If it should be assumed that some person should have been left in charge of the libelant's boat, and that it was the duty of the Winnie to see that this was done, and that the libelant is entitled to recover damages because it was not done, nevertheless the proofs do not authorize a recovery. The proofs do not show that the libelant sustained loss for which he should receive compensation by reason of the act of the Winnie in leaving the tow without a guard. The libelant is not entitled to recover of the tug such loss as he may have sustained in consequence of the tortious proceedings of the wreck-master and his assistants. Compensation is recoverable for such damages only as are a sequence fairly to be anticipated from the act complained of. The liability for a negligent act, not amounting to a wanton wrong, extends only to compensating the party injured for such loss or injury as is shown to have been the natural and probable consequence of the negligent act, such as ought to have been foreseen, in the light of the attending circumstances. *Glover* v. *London & S. W. R. Co.*, L. R. 3 Q. B. 25; *Milwaukee, etc., R. Co.* v. *Kellogg*, 94 U. S. 469. The unlawful acts of third persons, though directly induced by the original wrong of the defendant, are never to be attributed to the original wrong as a proximate cause of the damage for which a recovery can be had. *Knight* v. *Wilcox*, 14 N. Y. 416; *Lynch* v. *Knight*, 9 H. L. Cas. 577; *Moore* v. *Meayher*, 1 Taunt. 39; *Vicars* v. *Wilcocks*, 8 East, 1; *Collins* v. *Cave*, 4 Hurl. & N. 225; *Crain* v. *Petrie*, 6 Hill, 522.

Applying this rule, the libelant would not be entitled, upon any view of the facts, to compensation in excess of the sum which the wreck-master could have lawfully demanded for salvage. If that functionary had acted in good faith, he would have been entitled to nothing more than fair compensation for a salvage service under the statute; and, upon the tender of a sufficient sum by the libelant to cover this compensation, it would have been his duty to surrender possession of the libelant's boat. Although when the wreck-master found the libelant's boat, there was no one on board or in charge, if he found her under circumstances that denoted, or ought to have denoted, that his services were not desired, and took possession of her with intent to supplant those interested in giving her relief, he had no claim for compensation. *The Upnor*, 2 Hagg. Adm. 3; *The Barefoot*, 1 Eng. Law & Eq. 661; *The India*, 1 W. Rob. 406.

Unless a vessel has been utterly abandoned, and is in contemplation of law a derelict, even *bona fide* salvors have no right to the exclusive

possession, and are bound to give up charge to the master on his appearing and claiming charge. *The Champion,* Brown. & L. 69. If the wreck-master had acted in good faith, and was entitled to salvage, the amount to which he would have been entitled, under the circumstances of the case would have been inconsiderable. It was incumbent upon the libelant to give proof to show what would have been reasonable compensation to the wreck-master, if he expected to recover upon this theory of the case. But, so far as may be gathered from the proofs, the wreck-master was entitled to no compensation for salvage services. On the contrary, if the proofs truly disclose the facts, he and his assistants, by their abuse of their powers, became trespassers *ab initio,* and lost all claims for salvage. *Oxley v. Watts,* 1 Term R. 12; *Aitkenhead v. Blades,* 5 Taunt. 198; *Van Brunt v. Schenck,* 13 Johns. 414; *Allen v. Crofoot,* 5 Wend. 506.

Thus far the case has been considered as though fault were attributable to the tug because the Winnie left the tow without any person in charge. As has been suggested, the circumstance that this was not alleged as a fault in the libel is significant to indicate that the libelant himself did not regard it as such. But the proofs show that the libelant acquiesced in and assented to all that was done in this behalf. If any person was to be left in charge of the canal-boat, emphatically the proper person was the libelant himself. How can he now be heard to complain that he has suffered loss by an act in which he voluntarily participated, or because that was not done which he could have done himself, and should have done? No rule is better settled than when a party who is entitled to the benefit of an obligation can save himself from a serious loss arising from a breach of it, by reasonable exertion, he will not be permitted to charge the delinquent with damages which arise in consequence of his own inactivity. *Warren v. Stoddart,* 105 U. S. 229. The libelant, equally with those who represented the tug, is chargeable with notice of all the consequences in fact and in law which were likely to proceed from the act of leaving his boat with no one in charge of her.

Upon the whole case, the conclusion is reached that the original injury to the libelant's boat was not caused by the negligence of the tug; that after the accident the tug did all that was within her power, and all that was reasonable and proper, to protect her tow from the consequences of the accident; that the proofs do not justify the inference that it was a negligent act to leave the tow in the circumstances of her situation to procure further assistance, or to do this without leaving any person in charge of her during the interval that was expected to elapse while assistance was being procured; but that, if some person should have been left in charge of the boat when the Winnie went to New York, the libelant should have known it, and should have remained herself. No theory of the facts justifies a decree for the libelant.

The decree of the district court is reversed, and a decree ordered dismissing the libel, with costs of the district court and of this court.