### PETTIE *v.* BOSTON TOW-BOAT CO.[1]

*(District Court, S. D. New York.   December 3, 1890.)*

1. TOWAGE—DAMAGES—OLD VESSEL—INABILITY TO RAISE VESSEL SUNK.
     When a barge was sunk by being negligently towed upon a sunken rock, and, in consequence of her old and weak condition, which rendered raising impossible, she became a total loss, *held*, that full weight should be given to this circumstance and the previous history of the boat by reducing the assessment of her value.

2. SAME—WEAKNESS NOT CONTRIBUTORY TO ACCIDENT—APPORTIONMENT.
     A previous condition of weakness on the part of a vessel negligently sunk not having contributed to the accident or induced the fault, and it not being possible that any express notice of such condition could have affected the navigation, and her old and leaky condition being known, *held*, that these conditions constituted no such fault in the vessel sunk as permitted a division of damages.

3. SAME—OVERVALUATION—COSTS.
     On the assessment of damages, the recovery of a much less sum than claimed for the value of an old vessel is not sufficient evidence of fraudulent exaggeration to deprive the plaintiff of his statutory right to costs, where the libelant's estimates are largely sustained by reputable witnesses, though the court adopt a much smaller valuation.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty. On exceptions to commissioner's report.
*Hobbs & Gifford*, for libelant.
*Wilcox, Adams & Macklin*, for respondent.

BROWN, J. Upon all the testimony in this case, I cannot resist the conclusion that the inability to raise the libelant's barge was because she was weak and rotten about her deck and water-ways, so that she could not sink with a hole in her bottom, and lie in a moderate tide even in mild weather, without partially breaking up, and thus become incapable of being raised. This previous condition, however, in no way contributed to the accident or induced the fault of the tug, nor could any notice of this condition be supposed possibly to have affected the navigation of the tug. I cannot find, therefore, that the barge was partly in fault, so as to direct any division of the damages. *The Granite State*, 3 Wall. 310. Nor was the loss in part occasioned by an intervening agency, so as to render the loss not the natural result of the tug's negligence. *Railway Co.* v. *Kellogg*, 94 U. S. 469, 475; *Mould* v. *The New York*, 40 Fed. Rep. 900; *The Bordentown*, Id. 682, 688, 689. The result was natural and to be looked for in the case of sinking an old and leaky boat, such as the claimant knew, or might have perceived, this boat to be. There is no evidence of any concealment, nor does it appear that the boat was unfit for the proposed voyage, but only that she was unfit to have a hole knocked in her bottom, and be sunk, without the risk of total loss. The duty to raise and repair, under such circumstances, if possible, and if anything can be saved thereby, is well settled. Here the accident resulted in a total loss in consequence of the weakness of the barge, which rendered raising impossible.

I am quite satisfied that a barge of ordinary seaworthy condition would not have proved a total loss as in this case, and this must greatly affect the estimate of her value as a basis of recovery. The history of the barge also is not favorable to any high estimate of her value, and the evidence seems to me to show that she was so old and weak as to be unable to bear sinking without going to pieces. Much as I must regard the judgment of the commissioner who saw the various witnesses, I nevertheless feel constrained to make a larger deduction from the libelant's estimates of her market value than was made by him. I cannot regard it as credible that the market value of such a barge, that could not sink, through a hole in her bottom, without going to pieces, is any greater than the estimate testified to by the most competent of the respondent's experts. I allow, therefore, $1,750 for the barge, and the report is modified accordingly.

It is not entirely clear upon the evidence that reasonable diligence was not used in the endeavor to save the cargo, or that these endeavors were not reasonably prosecuted until bad weather prevented further salvage. With the above modification, therefore, the report of the commissioner is confirmed.

It is further urged that the libelant should be disallowed the costs of the reference, on the ground that three-fourths of the testimony, amount-

ing, in all, to about 600 pages, taken before the commissioner, was made necessary through the libelant's attempt at a fraudulent exaggeration of the value of the barge. It is not contended that the mere fact of a recovery of a much less sum than that claimed is a sufficient cause for exercising the equitable power of the court, in admiralty causes, to deprive the successful party of his statutory right to costs. The litigant always has it in his power either to make a legal tender under the rules, or to admit an assessment of damages at a specified sum. If, as in this case, he does neither, but contests every part of the demand, it should be only in a clear case of oppression or of some malpractice that the statutory costs should be withheld. *The Marinin S.*, 28 Fed. Rep. 664; *The Straits of Gibraltar*, 32 Fed. Rep. 297. Differences in the estimates of the value of old vessels quite as great as this are not uncommon; and, considering the difficulties attending such estimates, I am not prepared to find that the differences in the present case, ranging from $1,250 to $6,500, prove a fraudulent exaggeration of value. In *The North Star*, 15 Blatchf. 532, and *The Utopia*, 16 Fed. Rep. 507, the reductions were much greater, and costs were allowed the libelants. Some special circumstances are relied on by the respondent as showing fraudulent overestimates of value. These circumstances are not conclusive on that point. The estimates are sustained to a considerable extent by disinterested and reputable witnesses, who cannot be supposed accessible to such motives. The costs are allowed as taxed.