## American Express Co. v. Harry Risley.

1. FELLOW-SERVANTS—*Who Are, a Question of Fact.*—Whether an employe of a railroad company, being both baggage master on the train and express messenger in charge of the baggage car, was a fellow-servant of a brakeman, is a question of fact to be determined by the jury, under instructions by the court as to the law relating to fellow-servants.

2. VARIANCES—*Must Be Specially Pointed Out.*—An objection on account of variance must point out what the variance is.

3. NEGLIGENCE—*May Be the Proximate, Where it is Not the Immediate, Cause of an Injury.*—Negligence may be the proximate cause of an injury of which it is not the immediate cruse. If the defendant's negligence concurs with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time.

4. PROXIMATE CAUSES—*The General Rule.*—The general rule is that a man is answerable for the consequences of a fault which are natural and probable; but if his fault happened to concur with something extraordinary and unforeseen he will not be liable.

5. SAME—*Requisites of a Finding.*—In order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it might have been foreseen in the light of the attending circumstances.

6. SAME—*Defined by Judicial Decisions.*—A long series of judicial decisions have defined proximate, or immediate and direct damage to be the ordinary and natural results of negligence, such as are usual and therefore might have been expected.

7. SAME—*Where the Negligence of the Defendant Was the Effective*

*Cause of the Injury.*—When the injury is the result of negligence of the defendant and that of a third person, or of the defendant and an inanimate thing, the plaintiff may recover if the negligence of the defendant was an effective cause of the injury.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Wabash County; the Hon. PRINCE A. PEARCE, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Affirmed. Opinion filed August 31, 1898.

## STATEMENT.

This is an action brought by appellee against appellant for the recovery of damages alleged to have been caused by the negligence of appellant's servants. Judgment for appellee for $1,486.

The declaration alleges in substance that on the 13th day of July, 1897, plaintiff was a brakeman on train No. 2 of the C., C., C. & St. L. Railway. That after said train had discharged its passengers at Vincennes, and crossed the track of the B. & O. Railroad at that city, preparatory to transferring express matter of appellant from said train No. 2 to the E. & T. H. Railroad train No. 4, going north, the plaintiff, as was required of, and was necessary for him to do, was standing in the door of the baggage car of said train No. 2, for the purpose of "spotting" or seeing that baggage cars on said C., C., C. & St. L. train No. 2 and the E. & T. H. train No. 4 should be stopped with their doors opposite, so that expressage on said train No. 2 could be transferred to the express car on train No. 4, and that while the plaintiff, with due care and diligence for his safety, was there performing his duties as brakeman, the defendant, by its servants, whose duty and custom it was to come on plaintiff's train upon its arrival, for the purpose of handling and transferring defendant's express matter, came to the express car of said train No. 2, in which plaintiff was so engaged, for the purpose of transferring defendant's express matter from said train No. 2 to the E. & T. H. train, and did so carelessly and improperly manage and handle a "chute," or trough, used by defendant's servants in so transferring

express matter, that said chute, which was made of boards and very heavy, and about fourteen feet long, was by the careless and improper handling of said servants, allowed to protrude at great and unnecessary length from the east side of said baggage car, causing it to strike a coal car on the track of the Indianapolis & Vincennes Railroad, and thereby causing the west end of the said chute to be suddenly and violently thrown against plaintiff, forcing him against the side of the doorway of the baggage car, whereby he was greatly injured, etc.

It appears from the evidence that a part of the baggage car, in which plaintiff was injured, was also used as an express car by appellant, its express matter being in charge of Everett Gould, who also received and delivered baggage; that at the time of the accident there was a large amount of express matter to be transferred, estimated to be about 8,000 pounds, consisting chiefly of fruit in boxes and crates, and three coops of chickens, piled around ready to be transferred. It was the custom, after discharging passengers and baggage at the depot, to move the train up to where train No. 2 stood, and to stop so that the doors of the baggage car on each train should be opposite. On the evening in question it was the appellee's duty to signal the engineer of train No. 2 when to start from the depot, and when to stop for the transfer of the express matter. It was customary for employes of appellant to put in the baggage car, lengthwise, a "chute," or heavy trough about fourteen feet long, eighteen inches wide and six inches high, to be used in transferring express matter from one car to the other. While no one testifies to having seen them put it in the car on the evening in question, there is evidence that four of appellant's servants brought it to the door of the car, and that they usually put it in the car lengthwise, and that they got in the car to go to the place of transfer. On this evening it was put in crosswise, one end protruding four or five feet from the east door of the baggage car, and the other end being in the west door of the car. The car was between eight and nine feet wide. Appellee, upon the order of the

conductor to pull the train up, testifies that he called to the employes of appellant, who were doing some work around the express car, " How are you fixed there, boys?" and that some one of the four, he don't know which one, replied, " All right, let her go." That he then signaled with his lantern to the engineer to start, and came in the car and took his stand in the west door, so as to signal for a stop, when the doors of the cars were " spotted," or opposite each other. That he did not see the " chute," although he must have stepped over it, and that while standing in the door, the projecting end of the chute on the east side struck a coal car standing on a side track, thereby knocking the east end back, which forced the west end forward, striking and pinning him against the side of the door and thereby injuring him.

S. Z. Landes, attorney for appellant.

Bell & Risley and E. B. Green, attorneys for appellee.

Mr. Justice Worthington delivered the opinion of the court.

Several reasons are urged by appellant why the judgment should be reversed. It is strongly urged that appellee must have seen the " chute" crosswise in the car when he stepped over it, and was therefore not in the exercise of ordinary care. This was a question for the jury. Appellee testifies positively that he did not see it. The evidence shows that there were chicken coops, boxes and crates of fruit on the floor of the car, in some confusion, being arranged for transfer. That during the short distance the train was to be moved, appellee was charged with the duty of watching when the doors of the trains were opposite, and of signaling when to stop. Under these conditions, with his attention specially directed to a specific duty, we can not say that he must have seen the " chute," and that the jury was mistaken in finding that he was in the exercise of ordinary care.

It is urged that Gould, being both baggage master on the train and express messenger in charge of the baggage car, was a fellow-servant of appellee.    This is a question of fact to be determined. by the jury, under instructions by the court as to the law relating to fellow-servants.    As the question was not raised in the trial court, there has been no consideration of it by the jury, and it is not before us now for review.    It is urged that there is a variance between the allegations of the declaration and the proof; .that the evidence does not sustain the cause of action alleged in the declaration; and that the court erred in 'not withdrawing the case from the jury upon the motions of appellant, made at the conclusion of plaintiff's testimony, and also .at the conclusion of the testimony in the case.

The negligence charged against appellant is in substance, that while the appellee was standing in the doorway of the baggage car for the , purpose of `seeing that it should be stopped opposite a door of another baggage car, appellants so carelessly managed and handled a " chute " that it was allowed to protrude from the east side of the baggage car, causing it to strike a coal car, and thereby causing the west end of the " chute " to strike appellee.

. An objection on account of variance must point out what the variance is.    St. Clair Co. Ben.. Soc. v. Fietsman, 97 Ill. 474; Start v. Moran, 27 Ill. App. 119.

The objection first made by appellant occurred following this testimony of appellee :    After describing the pulling up of the car after leaving the depot, and what he did, he said (we quote from the abstract) " the chute was sticking out four or five feet."

, Question by Landes, counsel for appellant :

" How long had the' chute been lying in 'that position at the time you gave the signal ? "

. A.    " It had been lying there from the time it was put in until it struck me."

Question by Risley, counsel for appellee :

. " Was it lying there from the time the train left the station south of the B. & O. S. W. crossing till the time .

you arrived at the place where you were giving the signal you just spoke of?"

A. "I can't say about that. We were within forty feet of where we were to stop. I gave the signal to go ahead a little. This end of the trough was sticking out here on this side, and there was a car of coal on the side track there. It struck that car on the east side. I was standing on the west side of the car in this door over here."

Landes: "We desire at this point to enter an objection. The plaintiff must make out his case by his declaration. This declaration charges that the injury was the result of the negligence of the servants of the defendant."

The objection was overruled and appellant excepted.

There was no error in this ruling. The objection was general in its character. The witness had before testified as to the "chute," and its placing in the car by the servants of appellant, and his testimony, when objection was made, was explanatory of how, by such placing, the injury was caused.

Appellee proceeded to testify:

"As I was saying, when I looked out and saw we were within about forty feet of where I wanted to stop, and gave the signal to move ahead a little, this "chute" that was protruding from the east side of the car, struck the car of coal on the side track, and caused the end to. fly round in the door that I was standing in—like a seat board across a wagon box, you men all know, sticking over one side when it strikes an obstruction, it will cause the other end to fly forward—and then it pinned me up to the side of the door jamb. The end that struck the coal car flew back, making the other end fly forward, striking my feet and pinning me to the door jamb."

Landis: "I now desire to renew my objection to this evidence as not the case made out by the declaration. It charges specifically that he came on the car for the purpose of discharging express matter; and by his testimony he put. in motion the force that caused his injury."

Objection overruled and exception.

The declaration states in substance that plaintiff was standing, as was necessary for and was required of him to do, in the doorway of the baggage car of said C., C., C. & St. L. train No. 2 for the purpose of "spotting" or seeing that the baggage cars on said C., C., C. & St. L. train No. 2 and the E. & T. H. train No. 4 should be stopped with their doors even for the purpose of, and in order that the express-age from said train No. 2 could be conveniently and expeditiously transferred to the express car of said train No. 4; and that while the plaintiff *  *  * was then and there performing his duties as passenger brakeman, the defendant, by its servants, *  *  * had come to the express car of said train No. 2, for the purpose of discharging and transferring defendant's express matter from said train No. 2 to said train No. 4, and did so carelessly and improperly manage and handle a "chute," used by defendant's servants for transferring express matter from the C., C., C. & St. L. trains to the E. & T. H. trains, that it was allowed to protrude at great length from the east side of the car, causing it to strike a car on the track of the I. & V. railroad, and thereby causing the west end of said chute to be thrown against plaintiff, etc. The objection, then, that "the declaration specifically charges that plaintiff came on the car for the purpose of discharging express matter," is not tenable, as no such specific charge is made. The latter part of the objection is, that by appellee's testimony, "he put in motion the force that caused the injury himself." This seems to be the alleged variance most strongly insisted upon by appellant. In other words, it is claimed by appellant that the proximate cause of the accident was the progressive motion of the train put in motion by the signal of appellee, and not the protrusion of the chute in question.

Three causes concurred in producing the injury to appellee, viz.: the motion of the train; the coal car on the side track; and the placing of the "chute" crosswise in the car, so as to protrude from the east side thereof.

It appears from the evidence that the movement of the train was the usual movement at this place for the transfer

of express matter. There is no evidence as to whether the standing of a coal car on the side track was a usual or an unusual circumstance. It is a matter of common experience that cars are very frequently left standing on side tracks, especially in or near villages and cities. It is also in evidence that the placing of the chute crosswise in the car was an unusual condition, and this is the negligence charged against appellant. When the chute was placed in the car, the servants of appellant riding in the car with it knew that it was to be carried to the place of transfer, and if they put it in the car must have known that it extended out from its side. It is fair to presume that the express agent of appellant, with the other servants of appellant located at Vincennes, knew of the surroundings of the depot at that place, and of the location there of the side tracks. These were proper matters for the jury to consider in passing upon the question of appellant's alleged negligence, and as to whether it was the proximate cause of the injury to appellee. If it was negligence under the circumstances to locate the chute as it was located when put in the car, it was continuing negligence to leave it in that location. If, when so placed, under the attendant conditions, it was not unlikely that the end of the chute would strike some obstacle when the car was put in motion, and it did so strike, then such placing and continued location was a proximate cause.

It is said in Shearman & Redfield on Neg., Sec. 10, 3d Ed.:

"Negligence may, however, be the proximate cause of the injury of which it is not the sole or immediate cause. If the defendant's negligence concurred with some other event, other than the plaintiff's fault, to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time. * * *

"The practical construction of 'proximate cause' by the courts is a cause from which a man of ordinary experience

and sagacity could foresee that the result might probably follow."

Under this definition of "proximate cause," the proof fitted the declaration, although appellee may have signaled the train to move.

It is said in McGrew v. Stone, 53 Penn. 436 :

" The general rule is that a man is answerable for the consequences of a fault which are natural and probable; but if his fault happened to concur with something extraordinary and unforeseen, he will not be liable."

It was not unforeseen in the case at bar that the train would be moved just as it was moved; and it was not extraordinary that a chute, protruding four feet from a car door, might strike a car standing on an adjacent parallel side track.

The following cases state the law as to proximate cause as favorably for appellant as the tenor of the decisions warrants : " It is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it might have been foreseen in the light of the attending circumstances." Milwaukee R. Co. v. Kellogg, 94 U. S. 469.

" A long series of judicial decisions has defined proximate or immediate and direct damages to be ordinary and natural results of the negligence, such as are usual, and therefore might have been expected." Henry v. S. P. R. R. Co., 50 Cal. 183.

In Pullman Car Co. v. Laack, 143 Ill. 261, the court say : " It is well settled that when the injury is the result of negligence of the defendant and that of a third person, or of the defendant and an inevitable accident, or an inanimate thing has contributed with the negligence of defendant to cause the injury, the plaintiff may recover if the negligence of the defendant was an effective cause of the injury.

This further limitation is stated in the above case : " If it could have been foreseen, by the exercise of ordinary care,

that injury might or would result from the negligence."
P. 260.

Tested by these cases, the declaration alleged negligence
that under the proof was properly submitted to the jury.
It was for them to say whether the result that happened
was an ordinary and natural result that might have been
reasonably foreseen, considering all the circumstances of
the case.

In the light of the authorities quoted, we think there was
no substantial variance; that the evidence tends to support
the allegations of the declaration; that issues were presented
that were proper to be submitted to the jury, and that the
court did not err in refusing to instruct the jury to find for
defendant.

Appellant urges that the court erred in sustaining an
objection to this question asked of H. T. Kuhlmeyer,
express agent, who was in the baggage car.

Q. " I will ask you if a man of ordinary intelligence,
good eyes and ears, could have stepped across that ' chute '
without knowing it was there ? "

The objection was properly sustained. It called for a
conclusion of the witness. It was for the jury, from a
description of the situation and circumstances, and the
testimony in the case, to draw the conclusion, and not the
witness.

The first instruction for appellee is objected to, upon the
ground that it does not restrict the jury to the negligent
acts charged in the declaration. As the only negligent act
charged and sought to be proved was the improper placing
of the chute, there is no reversible error in the instruc-
tion. Nor is the objection valid that the jury " could
find by it justification in finding for appellee, although it
affirmatively appears he knew of the danger and unneces-
sarily went into it."

The instruction states an abstract proposition of law,
and in this respect is not to be commended. But it is
not open to the last objection named, and besides, the jury
was told by appellant's instructions, that the plaintiff must

affirmatively show by a preponderance of the evidence that he was in the exercise of due care; and if he did not, that the verdict should be for defendant.

We find no error in the second and third instructions.

The fourth might have been more definite, but it is not misleading. The employment of the servants of appellant from the time of their bringing the chute and entering the baggage car, was the transfer of express matter. What they did antecedent to the actual transfer, was in view of and preparatory to the transfer.

The fifth instruction is not bad. It limits a recovery of damages to the issue, "if the jury shall find the plaintiff has been injured as charged in the declaration." This is not a limitation, as appellant contends, to the described injuries, however received, but it is also a limitation to the causation of the injuries as described in the declaration.

The instructions asked by appellant and refused were properly refused. What we have said, *supra*, in reference to proximate negligence, suggests reasons why all but the eighth should be refused. The eighth, in effect, tells the jury that if they believe that appellee knew the chute lay across the car, they should find for the defendant.

This invades the province of the jury. It was for the jury, and not the court, to say whether such knowledge constituted contributory negligence. Judgment affirmed.