## PULLMAN CO. v. GUTIEREZ et al.
### (No. 5902.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 21, 1917. On Motion for Rehearing, Dec. 12, 1917.)

CARRIERS ⬗411 — PULLMAN COMPANY — INJURY TO PASSENGER—NEGLIGENCE—PROXIMATE CAUSE.

Any negligence of the porter of a Pullman car, placed on a siding in a city to await the next train, in temporarily going away, leaving a woman passenger alone, was not proximate cause of any injury to her from fright on being unable with the single effort made to open the door, though it could be opened by turning the knob and applying a twelve-pound pull; as it could not be anticipated that she could not open it, and that if she could not, such result would follow.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by Emilia Gutierez and another against the Pullman Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Lane, Wolters & Storey, of Houston, and James B. Wells, Joseph K. Wells, and Herbert Davenport, all of Brownsville, for appellant. Graham, Jones & George, of Brownsville, for appellees.

FLY, C. J. This is a suit for damages instituted by Emilia Gutierez, joined by her husband, Jacinto Gutierez, against appellant, it being alleged that Emilia Gutierez was, on or about August 22, 1914, a passenger on a sleeping coach of appellant, going from San Antonio to Sam Fordyce, Tex., on the San Antonio & Aransas Pass Railway to Sinton, and from there to destination on the St. Louis, Brownsville & Mexico Railway; that the car arrived in Sinton about 7 o'clock a. m., and not having made connection with the connecting line, was placed on a siding where it remained until 5 o'clock p. m., of the same day; that she and one Jack Caldwell were the only occupants of the sleeping coach, which was known to the negro porter who was in charge of the car; that she was a woman in delicate health, about 30 years of age; that after 8 o'clock, when Caldwell and the porter had left the car she attempted to open the doors of the car and found them locked, or too heavy for her to open, and she became greatly frightened and terrorized and fell into hysteria, bordering on temporary

delirium which lasted for a number of days, and her entire health and nervous system were affected thereby. The cause was tried by jury, resulting in a verdict and judgment for appellees in the sum of $2,975, the exact amount prayed for in the petition of appellees.

We take the statement of the facts set out in the brief of appellant as being true, except in the three particulars in which objection is made to the statement by appellees. We find that Emilia Gutierez was a "little delicate" and is "a frail and delicate person," but was in good health, as testified by her; that the car was on a siding about 400 yards from the business part of Sinton; that the woman testified that she examined the car and found she was locked in. The doors were only locked as against persons from the outside and not locked as to those on the inside of the car. The windows were up, only screens being over the openings. Caldwell, a witness for appellees, testified that the doors were locked as against him from the outside until about 12 o'clock when he found the doors open, and found Mrs. Gutierez and the negro in the car. He then went back to town, sent a telegram for the woman, and brought some ice cream and fruit to her. He then went to town again and, returned in company with a Mr. Custis and sat outside the car until about 5 p. m., when the car was taken off by a train. The woman complained of being sick, about noon.

The first and second assignments of error are directly in the face of the rules for briefing and are too general to be considered.

The third and fourth assignments of error complain of the refusal of the court to instruct a verdict for appellant, as requested by it. This contention necessitates a review of the testimony which is as hereinbefore stated. That testimony discloses that Mrs. Gutierez was a passenger on a Pullman sleeping car, which was carried by the San Antonio & Aransas Pass Railway Company from San Antonio to Sinton and there placed on a siding to await the arrival of the train of the connecting line which would convey the car to its destination. The car was placed on the siding about 7 o'clock a. m., and remained there until about 5 p. m. The evidence showed that, for some reason not disclosed, Mrs. Gutierez desired to leave the car between 8 and 9 o'clock, and could not because she could not open the door. Afterwards, although the porter and Caldwell came into the car, she did not express a desire to leave the car. All she told Caldwell was that she was sick and wanted him to send a telegram for her. She did not complain that the car had been fastened so that she could not leave it. Mrs. Gutierez, although small, was a healthy woman, with nothing about her to indicate, so far as the record discloses, that she was not able to open an unlocked sleeping coach door, or that she would have an intense attack of hysteria if she failed to open the door. The testimony showed beyond doubt that the doors could not be locked so as to prevent any one inside from going out, and that an average pull of twelve pounds would be required to open the doors from the inside. The car was from 50 to 75 yards from the nearest residences, and within 50 yards of an ice factory and blacksmith shop. The woman seems to have made only one effort to open the doors of the car, and that was about 20 minutes after Caldwell carried off the dishes from which she had eaten her breakfast, which he had brought to her. She claims that the knowledge that she could not get out was what affected her, and not that she was afraid some one might get in. She claims to have yelled, but no one seems to have heard her. She claims that she did not see Caldwell after he left with the dishes, but he swore that he went into the car about noon and she gave him the telegram and asked him to send it. He sent the telegram, and about 1:30 p. m., brought her some fruit and ice cream. The negro porter claimed to be sick at noon also. At least a part of the windows of the car were up all day. The porter swore that he was in and about the car most of the day, and Caldwell testifies that he was in the car at noon and probably at 1:30 p. m. and 3 p. m.

The only ground of negligence that could arise from the allegations and proof was the condition of the doors being such that Mrs. Gutierez could not open either of them. The siding was alleged to be in the town of Sinton, at a point near or in the resident part of the town. No negligence is shown in placing the car on that siding, if so, it would have been that of the railway company and not of appellant. No negligence was shown in the fact that the porter went out of the car for a while, for no one could reasonably have anticipated that a female passenger would desire his presence in the car all the time. Appellees allege that she had been in a sanitarium, and was in a weakened, pale, and frail condition; she swore that she was in a healthy condition. Although she was small, how could any one anticipate that she would desire to leave the car at the only time when it seems that the porter was absent, and could not pull twelve pounds resistance at the door so as to open it? It is not claimed that any one connected with appellant knew that Mrs. Gutierez had been in a hospital, or that she was not a normal woman. She says she was healthy, and she ate her breakfast and probably the ice cream and fruit that was brought to her by Caldwell.

If the doors were too heavy for Mrs. Gutierez to open or were locked from the inside, no reasonable being could have anticipated that any healthy, normal passenger would have hysterics and become unconscious and have a spell of sickness because the doors could not be opened, in the absence of any

one molesting her or in any way making her afraid. She was absolutely protected from all danger because no one could enter the car except the porter who had the only key to the doors. It was not negligence to have the doors constructed as they were, and if it was negligent for the porter to absent himself from the car for a short time, the evidence fails to show that his absence was the direct and proximate cause of the injury to Mrs. Gutierez, but her inability to open the unlocked doors. No one could have anticipated that the absence of the porter from the car for a while would cause a female passenger to go into hysterics. The woman made but one effort to open the door and then ceased to make any efforts to get out of the car. She does not claim to have turned a knob on the door, or that there was none to turn, but merely that she pulled and pushed the door. She was sharply contradicted as to being unconscious and in other particulars by her witness Caldwell. He talked with her at noon and at her request sent the telegram, and yet she swore she never saw him again after he left with the tray, after she had eaten her breakfast.

The test in such cases is, Would a reasonably prudent man have anticipated, in view of all the facts, the result that flowed therefrom? Railway v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Railway v. Bigham, 90 Tex. 223, 38 S. W. 162. No reasonable man could have anticipated that a female passenger would try to open the door by merely pulling or pushing it without turning the knob or handle, or that when she failed to open it that she would become frightened or excited and go into hysterics. If the door would not open by the use of means within the power of the passenger she should have proved it, and proof was not made by testimony showing that the door was pushed and pulled.

The other assignments need not be considered, but because the evidence is not sufficient to sustain the verdict the judgment is reversed and the cause remanded.

### On Motion for Rehearing.

If the evidence showed that Amelia Gutierez used every effort to open the doors of the car, that does not disprove the fact testified to by two witnesses, and not contradicted, that no Pullman car door is ever locked so that it cannot be opened by applying the proper degree of force from the inside. This being true, how could appellant have anticipated that a grown woman could not open the doors of the car? The rule laid down in Railway v. Trott, 86 Tex. 412, 25 S. W. 419, 40 Am. St. Rep. 866, as to proximate cause is:

"In determining what is the proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence; such a consequence as under the surrounding circumstances of the case might and ought to have been seen by the wrongdoer to flow from his act."

Tested by this rule, who could have anticipated that the woman could not open the car doors, and if she could not that she would become so alarmed on a switch in the inhabited part of a county seat that she would be thrown into hysterics, and that such dire consequences as narrated by her and her witnesses would flow from such fright? Her body was not injured by any negligence on the part of appellant and all of her injuries must have flowed from her fright and terror, which could not have been anticipated by appellant. The car was not in an isolated spot, as contended by appellees. The evidence showed that, while the car might have been 400 yards from the business center of the town, it was in the residence part of the town.

The evidence of Amelia Gutierez shows that the porter did not lock her in the car, for she testified that he left the car before Caldwell did, and the doors were not locked when Caldwell left. She testified:

"The porter was not in the car at the time Caldwell took the dishes away; he had left. He gave me my coffee and left. I did not see him again."

Caldwell brought the breakfast after the negro porter brought the coffee, and when Caldwell left he must have locked the doors, if they were locked. In 20 minutes after Caldwell left with the dishes she tried the doors and found them locked. There was no evidence that the porter had returned after Caldwell left and before Mrs. Gutierez tried to open the doors. Mrs. Gutierez swore that she did not see Caldwell after he left with the dishes, and yet he is corroborated in his statement that he came back to the car and at the request of Mrs. Gutierez sent a telegram, by the fact that she admitted that she wrote the telegram to her father and he received it.

The motion for rehearing is overruled.