DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

DURING THE YEAR 1905.

---

## Champion Chemical Works v. Postal Telegraph-Cable Company.

### Gen. No. 11,919.

1. TELEGRAM—*what essential to fasten liability for wrongful transmission of.* While it is true that the alteration of a telegraphic dispatch in transmitting it is *prima facie* evidence of the negligence of the telegraph company, yet it is essential, before liability can be fastened upon the company, that it appear affirmatively, in addition to the error, that damages resulted therefrom as a direct, natural and proximate consequence of the act of the company.

Action on the case. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. FROST, Judge. presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed July 11, 1905. Rehearing denied October 10, 1905.

**Statement by the Court.** This is an action on the case brought by appellant against appellee for damages sustained through negligence in transmitting a telegram.

Prior to September 10, 1898, M. L. Barrett & Co., of Chicago, had frequently acted as brokers for appellant in the purchase and sale of chemicals. Appellant was engaged in the manufacture of concentrated lye and potash and selling to wholesale dealers. It used caustic soda in the manufacture of these commodities. Some days prior to September 10, 1898, through its brokers and agents, M. L.

(20)

Barrett & Co., it entered into negotiations with Wing & Evans, chemical brokers of New York City, for the purchase of caustic soda. In the beginning Barrett & Co. were requested to inquire what caustic soda could be purchased for, and letters upon that subject passed between Barrett & Co. and Wing & Evans. On Saturday, September 10, 1898, at the request of appellant, Barrett & Co. sent the following telegram to Wing & Evans: "Champion offers 120 Chicago, 7,000 drums, over 99," meaning thereby that appellant would pay $1.20 per hundred pounds for 7,000 drums of caustic soda, deliverable at Chicago during the year 1899. This message was not delivered in New York until after office hours. On Monday, September 12, 1898, Wing & Evans wired Barrett & Co. as follows: "One thirty-five lowest."

This was erroneously transmitted to Barrett & Co., so that it read as follows: "New York, September 12, 1898. M. L. Barrett & Co., Chicago. One twenty-five lowest. Wing & Evans."

On the same day the above message was sent, and presumably before it was received, Barrett & Co. wired Wing & Evans as follows: "Please reply to our dispatch concerning Champion." Apparently after this message was received from Wing & Evans, Barrett & Co. telegraphed them again as follows: "Champion says can buy Saltville including seventy-eight less than twenty prefers Solvay but twenty is limit."

On the same day, September 12, 1898, and apparently after the second dispatch and before receiving the third, Wing & Evans wrote Barrett & Co. as follows:

"Your first telegram making Champion's bid of 120 for 7,000 drums of caustic, delivered Chicago, did not reach us Saturday, evidently having come after office was closed. We have your second telegram asking us to kindly reply to yours, to which we answer that 135 for 60 per cent. was the lowest that we care to sell at. Caustic seems to be strengthening a little, in fact we have sold a number of contracts at advanced prices."

The evidence tends to show that when the erroneously

22 APPELLATE COURTS OF ILLINOIS.

VOL. 123.] Champion Chemical Works v. Postal Telegraph-Cable Co.

transmitted telegram was received by Barrett & Co., Leopold Friedman, one of appellant's officers, was notified of its receipt, and that he thereupon told Barrett & Co. that appellant would not buy 7,000 drums of caustic soda, but would take 5,000 drums at the price erroneously quoted, and that this order was wired to Wing & Evans on the same day. The evidence further shows that on September 12, 1898, Friedman sold 500 drums of caustic soda to Swift & Co. at $1.30 per hundred pounds, and on the following day an additional 500 drums to Ricker & Co. of Milwaukee, at the same price.

On September 13, 1898, Barrett & Co. again telegraphed to Wing & Evans as follows: "Wire quick anything to be said to Champion," and Wing & Evans replied: "You have our lowest price under any and all circumstances."

Wing & Evans at the same time wrote Barrett & Co. confirming their dispatches, and on the same day Barrett & Co. wrote Wing & Evans as follows:

"We have your answer to our dispatch of this morning, on the basis of which we fear you will lose the business. The circumstances of Friedman's offer was peculiar. He is not obliged to buy, but buying at 120 he could sell at a slight advantage. Not buying he would not sell; and we are inclined to the opinion that the customer he has in sight is not likely to buy Solvay; hence the business will be lost to you, if not to Mathieson or Wyandotte."

Wing & Evans replied to this letter on September 16th to the effect that they did not care to sell at any such figures as Barrett & Co. had put before them, and again named $1.35 as their lowest price for round lots.

On September 19, 1898, Barrett & Co. wired Wing & Evans to enter Champion Chemical Co.'s order for 5,000 drums at $1.25, Chicago, usual terms. In reply Wing & Evans wrote under date of September 20, 1898, as follows:

"We hardly understand this telegram as we have wired and written you that you had our very lowest figures, which meant just what we said, and we again repeat we will not sell at less than $1.35 delivered."

Throughout the entire transaction appellant was represented solely by Barrett & Co., its agents.

A jury was waived, and the cause was submitted to the court. The court found for the defendant and entered judgment on the finding.

WILLIAM FRIEDMAN, for appellant.

LOESCH BROS. & HOWELL, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The record in this case presents no controverted questions of fact. The theory on which appellant brought and tried the case was that appellee had been negligent in transmitting the telegram sent by Wing & Evans to M. L. Barrett & Co., appellant's agents, in response to the latter's inquiry for the market price of caustic soda, and relying on such quoted market price, it immediately sold 1,000 drums of caustic soda for future delivery at and for a greater price than that quoted, and that therefore being unable to buy from Wing & Evans at the price erroneously quoted, it sustained a direct loss as well as loss of profits. To state the theory and claim in the language of appellant's brief, it is: "Having been led by such erroneous quotation to sell 1,000 drums of caustic soda at five cents per hundred pounds less than the market price thereof, and having lost five cents per hundred of profit he would have made if the quotation of $1.25 had been correct, plaintiff claims damage of ten cents per hundred pounds on 1,000 drums of caustic soda at 675 pounds each, or a total of 675,000 pounds."

"The quoted price for this commodity is made upon a basis of 60 per cent., the article being paid for on its actual test, 70 per cent. On this basis the evidence discloses, and it is not questioned, that the loss as computed is $832."

Appellant's attorney in his brief further says that in the view which he takes of the case there is but one question to be determined, and that is, is not appellee liable to appellant for the sum stated as the actual damages sustained by it; and in that view he does not deem it proper to re-

24       APPELLATE COURTS OF ILLINOIS.

VOL. 123.] Champion Chemical Works v. Postal Telegraph-Cable Co.

view or criticise the propositions of law given at the request of the plaintiff or the defendant. This amounts to a waiver of the second, third and sixth assignments of error, thus relieving the court of the necessity of reviewing the action of the court below in holding or refusing propositions of law, and presents the single question of the liability of appellee to appellant for the negligence in transmitting the telegram, under the facts shown.

It is undoubtedly the law that the alteration of a telegraphic dispatch in transmitting it is *prima facie* evidence of the negligence of the telegraph company. But every act of negligence does not necessarily create a legal liability. The fact that a telegraph message has been transmitted incorrectly is not of itself a sufficient foundation on which to predicate a recovery for negligence. It must appear affirmatively in addition to the error that damages resulted therefrom as a direct, natural and proximate consequence of the act of the defendant. In Braun v. Craven, 175 Ill. 405, the court said: "The principle is, damages which are recoverable for negligence must be such as are the natural and reasonable results of defendant's acts, and the consequences must be such as in the ordinary course of things would flow from the acts and could be reasonably anticipated as a result thereof. Proximate damages are such as are the ordinary and natural results of the omission or commission of acts of negligence, and such as are usual and might have been reasonably expected. Remote damages are such as are the unusual and unexpected result, not reasonably to be anticipated from an accidental or unusual combination of circumstances—a result beyond and over which the negligent party has no control. The law regards only the direct and proximate result of negligent acts as creating a liability against a defendant."

In O'Connor v. Nolan, 64 Ill. App., p. 358, it is said: "Damages, however proximately they follow a breach of contract, cannot be recovered unless under the circumstances they were a natural result of the breach; that is, in order that compensation for the injury may be recovered, the injury

must be such as, according to the usual course of events, might, under like circumstances, have been expected. Sedgwick on Damages, vol. 1, sec. 142."

In Swift & Co. v. Rukowski, 67 Ill. App. 209, this court said: "The proximate cause of an event is that course which, in natural and continuous sequence, without interference of an efficient, independent, intervening cause produces the result."

In Railway Co. v. Kellogg, 94 U. S. 469, the court said: "But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of attending circumstances."

In Masterton v. Brooklyn, 7 Hill (N. Y.) 61, a leading case, it was held: "A plaintiff may rightfully recover loss of profits as damages for a breach of contract, but in such a case the profits to be recovered must be such as would have grown out of the contract itself as the direct and immediate result of its fulfilment. In the language of the Supreme Judicial Court of Massachusetts in Fox v. Harding, 7 Cush. 516, 'these are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into, but if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the particular contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.'"

While some of the foregoing cases grew out of breaches of contract, we think them applicable to the general proposition involved in this case. The right of recovery is the same whether based upon neglect of legal duty, not wanton in character, or upon a breach of a contract which is the law of the case as between the parties to it. Under these authorities, and others that might be cited, the dam-

ages claimed for the negligence proved is too remote. The negligence shown did not in natural and continuous sequence, without interference of an efficient, independent, intervening cause, produce the loss or injury sued for; nor was the injury the natural and probable consequence of the negligence shown, nor could it have been foreseen in the light of attending circumstances.

A jury was waived, and the case was submitted to the court for trial. It was a question of fact for the court, a jury having been waived, as to whether the injury and damages sustained by the plaintiff resulted from the negligent act of the defendant, or were the result of a new independent factor for which the defendant was not responsible. Vol. 8, Am. & Eng. Ency. of Law (2nd ed.), 581; Doremus v. Hennessy, 176 Ill. 617. The Court found, and the evidence shows, that plaintiff's loss was not caused by defendant's negligence.

The judgment of the lower court is affirmed.

*Affirmed.*