### MILWAUKEE AND SAINT PAUL RAILWAY COMPANY *v.* KELLOGG.

1. As the effect of the statute of Iowa is to make an occupant of land in that State, who, under color of title thereto, and in good faith, has made valuable improvements thereon, the owner of the improvements, the question as to the ownership of the land is immaterial in an action to recover for their wilful or negligent destruction.

2. Where the subject of a proposed inquiry before a court is not a matter of science, but of common observation, upon which the ordinary mind is capable of forming a judgment, experts ought not to be permitted to state their conclusions.

3. The question as to what is the proximate cause of an injury is ordinarily not one of science or of legal knowledge, but of fact for the jury to determine, in view of the accompanying circumstances.

4. A finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, is not warranted, unless it appear that the

injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. Where there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it.

5. The finding of the jury in this case, that the burning of the plaintiff's mill and lumber was the unavoidable consequence of the burning of the defendants' elevator, which had been caused by their negligence, is, in effect, a finding that there was no intervening and independent cause between the negligent conduct of the defendants and the injury to the plaintiff.

Error to the Circuit Court of the United States for the District of Iowa.

The facts are stated in the opinion of the court.

*Mr. John W. Cary* for the plaintiff in error.
*Mr. Myron H. Beach, contra.*

Mr. Justice Strong delivered the opinion of the court.

This was an action to recover compensation for the destruction by fire of the plaintiff's saw-mill and a quantity of lumber, situated and lying in the State of Iowa, and on the banks of the river Mississippi. That the property was destroyed by fire was uncontroverted. From the bill of exceptions, it appears that the " plaintiff alleged the fire was negligently communicated from the defendants' steamboat ' Jennie Brown ' to an elevator built of pine lumber, and one hundred and twenty feet high, owned by the defendants, and standing on the bank of the river, and from the elevator to the plaintiff's saw-mill and lumber piles, while an unusually strong wind was blowing from the elevator towards the mill and lumber. On the trial, it was admitted that the defendants owned the steamboat and elevator ; that the mill was five hundred and thirty-eight feet from the elevator, and that the nearest of plaintiff's piles of lumber was three hundred and eighty-eight feet distant from it. It was also admitted that there was conflict between the parties plaintiff and defendant respecting the ownership of the land where the mill stood and the lumber was piled, both claiming under a common source of title. The plaintiff had built the mill, and he was in the occupation of it, believing he had a right to be there."

Such having been the admissions, the court refused to allow

the parties to try the title to the land upon which the mill and lumber had been placed, proof of title being, in the opinion of the court, immaterial.   To this ruling the defendants excepted; and it is the first error they have assigned.   We are unable to perceive any reason why the proof offered was not, as the Circuit Court held it to be, perfectly immaterial to the issue between the parties.   By the law of the State of Iowa, "where an occupant of land has color of title thereto, and in good faith has made any valuable improvements thereon, and is afterwards, in a proper action, found not to be the rightful owner thereof," he is entitled to payment or credit for the value of his improvements.   Code of Iowa, sects. 1976–1981.   The effect of this statute is to make such an occupant practically the owner of his improvements, even though he be not the owner of the land on which they have been made.   If, therefore, the title to the land had been shown to be in the defendants, the proof would not have affected the right of the plaintiff to recover compensation for wilful or negligent destruction of the buildings and lumber.   Nor could it have changed the degree of prudence and care which the defendants were bound to exercise in order to guard against injury to that property.   The plaintiff is not to be regarded as a mere trespasser, wantonly thrusting himself or his property in the way of danger, — a trespasser to whom the defendants owed a less degree of caution than would have been due if he had been the undisputed owner of the fee-simple of the land on which the mill stood.   We cannot admit that the defendants owed no duty to the plaintiff, even if he was occupying their land without their consent.   An attempt was made during the argument to maintain that they had been found by the jury guilty only of an act of omission, and it was insisted that such an act would not give a right of action to the plaintiff if he was wrongfully in possession of their land.   Neither the fact asserted nor the inference drawn from it can be conceded.   The verdict of the jury was, 1st, That the elevator was burned from the steamer "Jennie Brown;" 2d, that such burning was caused by not using ordinary care and prudence in landing at the elevator, under circumstances existing at that particular time; and, 3d, that the burning of the mill and lumber was the unavoidable consequence of the burning of the elevator.

The only reasonable construction of the verdict is, that the fault of the defendants — in other words, their want of ordinary care and prudence — consisted in landing the steamer at the elevator in the circumstances then existing, when a gale of wind was blowing towards it, when the elevator was so combustible and so tall. If this is not the meaning of the verdict, no act of negligence, of want of care, or of fault has been found. And this is one of the faults charged in the declaration. It averred, that, while the wind was blowing a gale from the steamboat towards and in the direction of the elevator, the defendants carelessly and negligently allowed, permitted, and counselled (or, as stated in another count, " directed ") the steamboat to approach and lie alongside of or in close proximity to the said elevator. This is something more than nonfeasance : it is positive action, the result, consequence, or outworking, as the jury have found it, of the want of such care as should have been exercised.

It has been further argued in support of this assignment of error that the proffered proof of title should have been admitted, because it tended to show contributory negligence on the part of the plaintiff. But we cannot understand how it could have had any such tendency. Whether the mill stood on the defendants' land, or on other land equally distant from the steamer and elevator, and in the same direction, its exposure to the fire was exactly the same.

A second exception taken in the court below, and here insisted upon, is that the court refused to permit the defendants to prove by witnesses who were experts, experienced in the business of fire insurance, and accustomed by their profession to estimating and calculating the hazard and exposures to fire from one building to another, and to fixing rates of insurance, that, owing to the distance between the elevator and the mill, and the distance between the elevator and the lumber piles, the elevator would not be considered as an exposure to the mill or lumber, and would not be considered in fixing a rate thereon, or in measuring the hazard of mill or lumber.

This exception is quite unsustainable. The subject of proposed inquiry was a matter of common observation, upon which the lay or uneducated mind is capable of forming a judgment.

In regard to such matters, experts are not permitted to state their conclusions. In questions of science their opinions are received, for in such questions scientific men have superior knowledge, and generally think alike. Not so in matters of common knowledge. Thus, it has been held that an expert cannot be asked whether the time during which a railroad train stopped was sufficient to enable the passengers to get off, *Keller* v. *Railroad Company*, 2 Abb. (N. Y.) App. Dec. 480; or whether it was prudent to blow a whistle at a particular time, *Hill* v. *Railroad Company*, 55 Me. 438. Nor can a person conversant with real estate be asked respecting the peculiar liability of unoccupied buildings to fire. *Muloy* v. *Insurance Company*, 2 Gray (Mass.), 541. In *Durell* v. *Bederly*, Chief Justice Gibbs said: " The opinion of the underwriters on the materiality of facts, and the effect they would have had upon the premium, is not admissible in evidence." Powell's Evid. (4th ed.) 103. And in *Campbell* v. *Richards*, 5 Barn. & Ad. 846, Lord Denman said: " Witnesses are not receivable to state their views on matters of legal or moral obligation, nor on the manner in which others would probably be influenced, if the parties had acted in one way rather than in another." See also Lord Mansfield's opinion in *Carter* v. *Boehm*, 3 Burr. 1905, 1913, 1914, and *Norman* v. *Higgins*, 107 Mass. 494, in which it was ruled, that, in an action for kindling a fire on the defendant's land so negligently that it spread to the plaintiff's land and burned his timber, the opinion of a person experienced in clearing land by fire, that there was no probability that a fire set under the circumstances described by the witnesses would have spread to the plaintiff's land, was inadmissible.

The next exception is to the refusal of the court to instruct the jury as requested, that " if they believed the sparks from the ' Jennie Brown ' set fire to the elevator through the negligence of the defendants, and the distance of the elevator from the nearest lumber pile was three hundred and eighty-eight feet, and from the mill five hundred and twenty-eight feet, then the proximate cause of the burning of the mill and lumber was the burning of the elevator, and the injury was too remote from the negligence to afford a ground for a recovery." This proposition the court declined to affirm, and in lieu thereof

submitted to the jury to find whether the burning of the mill and lumber was the result naturally and reasonably to be expected from the burning of the elevator; whether it was a result which, under the circumstances, would naturally follow from the burning of the elevator; and whether it was the result of the continued effect of the sparks from the steamboat, without the aid of other causes not reasonably to be expected. All this is alleged to have been erroneous. The assignment presents the oft-embarrassing question, what is and what is not the proximate cause of an injury. The point propounded to the court assumed that it was a question of law in this case; and in its support the two cases of *Ryan* v. *The New York Central Railroad Co.*, 35 N. Y. 210, and *Kerr* v. *Pennsylvania Railroad Co.*, 62 Penn. St. 353, are relied upon. Those cases have been the subject of much criticism since they were decided; and it may, perhaps, be doubted whether they have always been quite understood. If they were intended to assert the doctrine that when a building has been set on fire through the negligence of a party, and a second building has been fired from the first, it is a conclusion of law that the owner of the second has no recourse to the negligent wrong-doer, they have not been accepted as authority for such a doctrine, even in the States where the decisions were made. *Webb* v. *The Rome, Watertown, & Ogdensburg Railroad Co.*, 49 N. Y. 420, and *Pennsylvania Railroad Co.* v. *Hope*, 80 Penn. St. 373. And certainly they are in conflict with numerous other decided cases. *Kellogg* v. *The Chicago & North-western Railroad Co.*, 26 Wis. 224; *Perley* v. *The Eastern Railroad Co.*, 98 Mass. 414; *Higgins* v. *Dewey*, 107 id. 494; *Tent* v. *The Toledo, Peoria, & Warsaw Railroad Co.*, 49 Ill. 349.

The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market-place.

2 Bl. Rep. 892.   The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation ?   Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury ?   It is admitted that the rule is difficult of application.   But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.   These circumstances, in a case like the present, are the strength and direction of the wind, the combustible character of the elevator, its great height, and the proximity and combustible nature of the saw-mill and the piles of lumber. Most of these circumstances were ignored in the request for instruction to the jury.   Yet it is obvious that the immediate and inseparable consequences of negligently firing the elevator would have been very different if the wind had been less, if the elevator had been a low building constructed of stone, if the season had been wet, or if the lumber and the mill had been less combustible.   And the defendants might well have anticipated or regarded the probable consequences of their negligence as much more far-reaching than would have been natural or probable in other circumstances.   We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury.   In such a case the resort of the sufferer must be to the originator of the intermediate cause.   But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it.   The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury.   Here lies the difficulty.   But the inquiry must be answered in accordance with common understanding. In a succession of dependent events an interval may always be

seen by an acute mind between a cause and its effect, though it may be so imperceptible as to be overlooked by a common mind. Thus, if a building be set on fire by negligence, and an adjoining building be destroyed without any negligence of the occupants of the first, no one would doubt that the destruction of the second was due to the negligence that caused the burning of the first. Yet in truth, in a very legitimate sense, the immediate cause of the burning of the second was the burning of the first. The same might be said of the burning of the furniture in the first. Such refinements are too minute for rules of social conduct. In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time.

If we are not mistaken in these opinions, the Circuit Court was correct in refusing to affirm the defendants' proposition, and in submitting to the jury to find whether the burning of the mill and lumber was a result naturally and reasonably to be expected from the burning of the elevator, under the circumstances, and whether it was the result of the continued influence or effect of the sparks from the boat, without the aid or concurrence of other causes not reasonably to have been expected. The jury found, in substance, that the burning of the mill and lumber was caused by the negligent burning of the elevator, and that it was the unavoidable consequence of that burning. This, in effect, was finding that there was no intervening and independent cause between the negligent conduct of the defendants and the injury to the plaintiff. The judgment must, therefore, be affirmed.

*Judgment affirmed.*