These actions were brought by W. B. Hardy and B. T. Hardy against the defendant to recover damages for negligently burning their timber. The allegations as to the burning, they being substantially the same in the two cases, are that the defendant's locomotive engine set fire to combustible material on its track and right of way, which was covered with dry leaves, pine straw, and woods mould, and in a very foul condition, and that the fire spread to the adjoining land, burning over a considerable area. That an effort was made to extinguish the flames, plaintiff taking some part in it, but that some days afterwards the fire, which had been left smoldering in the woods, broke out afresh, extending to the lands of plaintiffs and burning some of (116) their timber. The cases, by consent of all parties, or, rather, without objection, were consolidated by order of the court and tried together, the facts being practically alike.
The fire, as testified by at least two of plaintiffs' witnesses, L. C. Turnage and W. C. Carlyle, was first seen on the track and right of way, just after the train had passed, and there was evidence that the smokestack of the engine was defectively constructed, so that large and live sparks could be emitted therefrom, and that the same engine had before caused fires along the track. It is true that there was evidence to the effect that the engine was properly constructed and supplied with an efficient spark arrester and a good ash-pan, save when bad wood was used, but the facts we have stated were fully deducible from some of the evidence, by the jury, and they seem, under a perfectly correct charge, to have accepted them as proven to their satisfaction.
It cannot be disputed that there was evidence sufficient to establish the charge of negligence in either of two aspects, a defective engine and *Page 96 
a foul and dangerous track and right of way, either of which would constitute actionable negligence if it caused the fire in the beginning and was the proximate cause of the damage.
We said recently in Kornegay v. R. R., 154 N.C. 389: "When it is shown that the fire originated from sparks which came from the defendant's engine, the plaintiff makes out a prima facie case, entitling him to have the issue as to negligence submitted to the jury, and they were justified in finding negligence unless they were satisfied, upon all the evidence in the case, that, in fact, there was no negligence, but that the defendant's engine was equipped with a proper spark arrester (or ashpan, and otherwise to prevent the emission of sparks or fire) and had been operated in a careful or prudent manner." This was but a summary of what had been so often decided in former cases. Williams v. R. R., 140 N.C. 623; Craft v. Timber Co., 132 N.C. 151; (117) Knott v. R. R., 142 N.C. 238; Cox v. R. R., 149 N.C. 117; Deppe v. R. R., 152 N.C. 79; Currie v. R. R., 156 N.C. 419.
We early stated the proposition, which seems to be a clear logical syllogism, that "When the plaintiff shows damage resulting from the act of the defendant, which act, with the exercise of proper care, does not ordinarily produce damage, he makes out a prima facie case of negligence which cannot be repelled but by proof of care, or some extraordinary accident which makes care useless." Ellis v. R. R., 24 N.C. 138; Chaffin v.Lawrence, 50 N.C. 179; Aycock v. R. R., 89 N.C. 321; Haynes v. Gas Co.,114 N.C. 203, and more recently in Mizzell v. Manufacturing Co.,159 N.C. 265.
The rule may be justified, not only on the ground that negligence is a fair and reasonable deduction from the fact of casting the spark from the engine, as ordinarily, when care is exercised, such a result does not follow, but for the further reason that the proof of care can more easily be produced by the defendant, who has control of the engine and should know its true condition, than by the plaintiff, who may be ignorant of it.Aycock v. R. R., supra. We do not say that there is no exception to or qualification of the rule, but it applies in this case, and that is sufficient for our purpose.
Referring to this subject in Deppe v. R. R., 152 N.C. at p. 82, JusticeManning thus states the rule applicable to the state of facts here presented: "In considering the origin of the fire, it is immaterial whether the fire caught on or off the right of way. The place of ignition is important on the second question. The second question presented is, Could the jury find from this primal fact that the plaintiff's property was negligently burned by the defendant? In Sherman Redfield on Negligence, sec. 676, the learned authors say: `The decided weight *Page 97 
of authority and of reason is in favor of holding that, the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it had used all those precautions for confining sparks or cinders (as the case may be) which have already been mentioned as necessary.'" He adds that this is the common law of England, and has been followed in many States, several of which he names, and he cites the following (118) cases decided by this Court as sustaining it: Ellis v. R. R.,supra; Mfg. Co. v. R. R., 122 N.C. 881; Hosiery Co. v. R. R.,131 N.C. 238; Lumber Co. v. R. R., 143 N.C. 324. The evidence in our case, though somewhat circumstantial, tends to show conclusively that the fire was ignited by live sparks or coals that fell from the defendant's engine. This being so, the proof is also clear that the track and right of way were foul with dry stubble, which readily caught from the spark or cinder, and that there and in that way the fire originated. If it caught off the right of way, there is equally strong evidence of negligence against defendant, and it was for the jury to find the fact. The question was fairly submitted to them. It was sufficient for them to find that the fire occurred in either one of the suggested ways, for it does not, in law, require two acts of negligence to make a wrong. Knott v. R. R., supra.
But defendant contends that if the fire was negligently caused by the engine dropping a live spark from the smokestack, or a live cinder from the ash-pan, it was apparently extinguished after burning over intervening land for some distance from its track, and while it smoldered in the stumps, and perhaps in other places, it was several days before it broke out again and destroyed the plaintiff's timber. The evidence is, that on 12 June, 1911, and at first, it burned timber on land next to the railroad track before it reached the plaintiffs' timber on that day, a small portion of which was consumed, and that on 23 June, 1911, it "sprang up" again, and spread to plaintiffs' other timber. The evidence also discloses the fact that plaintiffs assisted in the attempt to put out the fire, but it turns out that the combined efforts of all the neighbors failed to extinguish it. But it is argued from these facts that the fire that destroyed the plaintiffs' woods on 23 June, 1911, was not proximately caused by that which started on the defendant's right of way 12 June, 1911. Neither the distance traversed by the fire, though lands of other parties intervened, nor the time elapsing between the initial fire and the final conflagration which destroyed the plaintiffs' property, is conclusive against the existence of proximate cause, that is, that the second fire was proximately caused by the first. (119) The connection of cause and effect must be established; the breach of duty must not only be the cause, but the proximate cause, of the *Page 98 
damage to the complaining party. We may thus illustrate and state the rule: The proximate cause of an event is understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which it would not have occurred. This is a general statement of the rule. 1 S. Redf. on Neg. (5 Ed.), sec. 26. The learned authors add something which is peculiarly applicable to the facts of our case: "Proximity in point of time or space, however, is no part of the definition. That is of no importance, except as it may afford evidence for or against proximity of causation, that is, the proximate cause which is nearest in the order of responsible causation." 1 S. Redf. Neg. (5 Ed.), p. 28. While we do not say that the question of proximate cause may not sometimes, owing to the special facts of the case in hand, resolve itself into one of law, it has been said to be the general and true rule that what is the proximate cause of an injury is ordinarily a question for the jury, the court instructing them as to what the law requires to constitute it, and the jury applying the law to the facts. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. Scott v. Shepherd (squib case), 2 W. Bl., 892. "The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, (120) is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." R. R. v. Kellogg, 94 U.S. 469.
What was said by Justice Strong in the Kellogg case has generally been approved and adopted by the courts as an apt statement and explanation of the rule. Ramsbottom v. R. R., 138 N.C. 39.
Judge Cooley has given us three propositions which further illustrate the application of the general rule, and in which he states it a little differently, but with his usual accuracy: *Page 99 
(1) In the case of any distinct legal wrong, which in itself constitutes an invasion of the right of another, the law will presume that some damage follows as a natural, necessary, and proximate result. Here the wrong itself fixes the right of action; we need not go further to show a right of recovery, though the extent of recovery may depend upon the evidence.
(2) When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through injurious consequences resulting therefrom, this consequence must not only be shown, but it must be so connected by averment and evidence with the act or omission as to appear to have resulted therefrom according to the ordinary course of events and as a proximate result of a sufficient cause.
(3) If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote. Cooley on Torts (Ed. 1879), p. 69.
In substantial agreement with this view of Judge Cooley is the further observation of the Court in R. R. v. Kellogg, 94 U.S. (121) at p. 475: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. Here lies the difficulty."Justice Strong adds that this difficulty must be met and the inquiry answered in accordance with common understanding as applied to the peculiar facts. What would be the proximate cause of an event under some circumstances might not be under other and different facts and surroundings, and our common sense, which is the essence of the law, must be brought into service.
We may now the more readily answer the objection of the defendant to the plaintiffs' recovery, based upon the absence of any proximate *Page 100 
cause for the last fire which can be referred to its original negligence. The intervention of time or distance between the two fires, as when seen, is not fatal to plaintiff, but was proper to be considered by the jury on the question of proximate cause. Phillips v. R. R., 138 N.C. 12;Black v. R. R., 115 N.C. 667; Poeppers v. R. R., 67 Mo., 715;R. R. v. McBride, 54 Kansas, 172. If the continuity in sequence of the several events was not broken, and the causes operated together and in connection with each other, either successively or concurringly, each being a contributing cause to the final result, as the jury, by their verdict, evidently found to be the fact, the defendant's act in starting the fire would, in law, be said to have proximately caused the damage to the plaintiff's lands, and a cause of actionable negligence would then be presented. The court charged the jury, in substance, that the burden was on the plaintiff to satisfy them that the same fire which was started on 12 June, 1911, burned the land of the plaintiffs on the 23d, (122) and if they had failed to do so, they were not entitled to recover; otherwise, they would be. The fire might be so continuous as to form an unbroken chain of causation leading up to the last outbreak which destroyed plaintiffs' trees, although there may have been a considerable interval of time elapsing between the first and the last fire. Its identity was not lost because it died down and smoldered in the stumps and in other burnable matter, and finally was revived and broke out afresh by reason of the contact with the dry pine leaves, which carried it at once to plaintiffs' land.
But the defendant's counsel rely on Doggett v. R. R., 78 N.C. 305, and it must be admitted that, at first blush, there is a seemingly close resemblance between the two cases; but upon further comparison, it is found to be a similarity more apparent than real, and, besides, a critical examination of that case will discover that the two cases are essentially different. In this case the court instructed that they must not answer the issue in favor of defendant unless they were satisfied that the fire of the 12th was the same that burned the plaintiffs' woods on the 23d, it being one continuous fire from the start. There was evidence to support this charge, for the jury might well have inferred from the testimony of the witnesses, Lindsay Brown and others, that the fire had never been extinguished, but continued to burn slowly, or to smolder, until Friday, the 23d, when it reached plaintiffs' trees and destroyed them. In theDoggett case the very learned Justice laid stress upon the negligence of the plaintiff, placing the burden upon him to show its absence, and also undertook to decide the question of plaintiff's negligence as matter of law. We know that, in both respects, the law of negligence has since undergone great change by statute and decisions *Page 101 
of this Court. Again, in that case, it was said: "The second burning did not necessarily follow the first, because of the intervening arrest of the progress of the fire. But even supposing that the progress of the flames had been continuous, if there was any intervening negligence in the effort to extinguish the fire either by the intermediate owners of fences or by the neighbors who assembled for that purpose, when their endeavors properly exerted might have been successful, the entire weight of authority is that the plaintiff cannot recover." In our (123) case there is no allegation of negligence on the part of the plaintiffs, in the answer, and no issue as to it was submitted, nor, we believe, is there any suggestion that they did not do their best to stay the progress of the fire — all that the law required of them. In the Doggett case, as we have seen, in the words taken from the opinion, the "progress of the fire was arrested," while there is evidence in this record that the fire started on the 12th was not extinguished.
If the defendant wished to rely upon plaintiffs' negligence, or desired any more definite instruction in regard to it, a specific request should have been made, based upon proper averment in the answer and upon the evidence. Simmons v. Davenport, 140 N.C. 407, and cases cited in Anno. Ed.
Conceding only for the sake of argument that the judge's charge was somewhat general in its terms, it was in itself correct, and if the defendant thought that some other view of the matter should be presented, or that it should be more pointed or addressed more closely to the particular facts, he should have made his want known to the court in the usual way. So we said, by Justice Hoke, in the apposite case of Gay v.Mitchell, 146 N.C. 509, when the question of proximate cause was likewise involved. The court might well have asked the jury in our case to inquire and find whether, in the exercise of care, the defendant could reasonably have foreseen that the injury to plaintiffs' property would be the natural and probable consequence of its negligence in dropping sparks in the right of way, and explained more fully the rule of proximate cause, in any view of the evidence presenting the question; but we cannot say that its omission to give the charge is positive or reversible error, in the absence of any special request to do so. The jury have evidently found that the fire was not extinguished, but continued in its progress, though very slowly at times, until the final catastrophe. It may be true that plaintiffs were under the duty to protect their property against a seen or known and threatened danger, and to prevent or minimize the danger by the use of proper care (2 S. Redf. on Neg., (5 Ed.), sec. 679; Hocutt v. Telegraph Co., 147 N.C. 186, and that their failure to do so would exculpate defendant or diminish (124) *Page 102 
the measure of its liability. But this question is not now before us, and we forbear to discuss it. Nor need we determine whether there was any intervening or independent cause, or evidence of it, which in law, or in the judgment of the jury acting under proper instructions from the court, would insulate the defendant's original negligence or affect its liability. Nor need we inquire as to the nature or intent of such an intervening cause, with respect to its sufficiency for the purpose of breaking or dissevering the sequence of events, that is, whether it should be itself a superseding, responsible, or culpable cause. Suffice it to say that proximity of cause has no necessary connection with contiguity of space or nearness in time. The negligent fire, in its foreseeable, natural, and probable course and progress, to be ascertained by attending circumstances, is regarded as a unity. Cooley on Torts (1879), pp. 76-77, and notes. The intervention of considerable time and space may be considered by the jury on the question of proximate cause, but it is not controlling. 2 Sh. and Redf. on Neg. (5 Ed.), sec. 666, and notes, especially 7 and 8. The pauses in the progress of the fire, and the lapse of time, while matters for the consideration of the jury in determining the continuity of effect, do not enable the Court to say, as matter of law, that the causal connection between the defendant's negligence in firing the right of way and the injury to the plaintiff was broken. It was so said, substantially, inHaverly v. R. R., 185 Pa. St., 50. The damage, it is true, must be the legitimate sequence of the thing amiss, and if the negligent act and the resulting loss are not known by common experience to be naturally and usually in such sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the latter and the damage are not sufficiently conjoined or concatenated, as cause and effect, to constitute actionable negligence, the element of proximate cause being absent. Cooley on Torts, 69.
In this case the jury must have found that it was one and the same fire throughout its various stages, there being no complete cessation of it. With this fact before us, there does not appear to have been any intermediate efficient and adequate cause operating by itself to (125) break the connection, and the primary wrong must be considered as reaching to the effect, and, therefore, as proximate to it.R. R. v. Kellogg, supra; Insurance Co., v. Boon, 95 U.S. 619.
We have declined to enter upon the wide field of investigation which would have opened up to us if we had attempted a critical review of the doctrine of proximate and remote cause, as it is discussed in cases without number, being admonished against the futility of such a course by the words of a wise judge when discussing a similar question: "It *Page 103 
would be an unprofitable labor to enter into an examination of the cases. If we could deduce from them the best possible expression of the rule, it would remain after all to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations. One of the most valuable of the criteria furnished us by these authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened of itself, sufficient to stand as the cause of the misfortune, the other must be considered as too remote." Insurance Co. v. Tweed, 74 U.S. 44. For the reason given, we do not regard the case of Doggett v. R. R. as controlling the decision in this case.
The question raised, as to whether there was any evidence that defendant owned a right of way, and if so, as to its extent, is answered by the language of the witnesses, who testified, in so many words, that the fire was seen on the right of way, and track, which implies, necessarily, that there was a right of way, and, nothing else appearing, this is some evidence of the fact for the jury. A similar question was decided at this term. Lumber Co. v. Brown.
No error.
Cited: Aman v. Lumber Co., post, 373; Ward v. R. R., 161 N.C. 184; Ridgev. R. R., 167 N.C. 525; McRainey v. R. R., 168 N.C. 571; Kemp v. R. R.,169 N.C. 732; McBee v. R. R., 171 N.C. 112.
(126)