### J. W. BRADY v. WACCAMAW LUMBER COMPANY.

(Filed 27 March, 1918.)

**Railroads—Fires—Negligence—Act of God—Proximate Cause—Trials—Evidence—Nonsuit.**

Where there is evidence that a fire was set out and damaged plaintiff's land from a defective locomotive of defendant railroad company on its foul right of way, and also, in defendant's behalf, that the damages would not have resulted except for an unusually high wind, a judgment of nonsuit is properly refused, the defendant's initial negligence running

through and being the proximate cause of the concurring acts which re-
sulted in the injury complained of. *Ferebee v. R. R.*, 163 N. C., 331, and
other like cases, cited and applied.

ACTION, tried before *Devin, J.*, and a jury, at August Term, 1917, of
BRUNSWICK.

Plaintiff sued for damages from burning timber on his land, which
he alleged was caused by defendant's negligence. The fire was set out
from one of the defendant's engines, which it is alleged, was defectively
constructed, so that it emitted sparks from its smoke-stack, it not hav-
ing a proper spark-arrester. The jury returned the following verdict:

1. Is the plaintiff the owner of the lands described in the complaint
as the home tract, and of that portion of the Gum Branch tract alleged
to have been burned over? Answer: "Yes."

2. Did the defendant negligently and carelessly cause the fire, as
alleged in the complaint, to burn over lands owned by the plaintiff and
cause damage as alleged? Answer: "Yes."

3. What damage, if any, is plaintiff entitled to recover from the de-
fendant? Answer: "$500."

The defendant at the close of the evidence moved to nonsuit the plain-
tiff. Motion refused. Judgment on the verdict, and appeal by de-
fendant.

*C. Ed. Taylor for plaintiff.*
*Robert Ruark for defendant.*

PER CURIAM: The case states and there was proof:

1. That plaintiff is the owner of the land on which the timber was
standing and growing.

2. That the defendant negligently started the fire.

3. That the amount of damages is $500.

There was testimony to the effect that the defendant's engine was
defective, and its right of way was foul. The fire caught on the right
of way, and was communicated over the intervening land to plaintiff's
timber on an adjoining tract. The defendant contends that there was
an extraordinary wind blowing at the time, and this caused the fire to
spread and destroy the plaintiff's trees, and that this was a special inter-
vening cause of the injury beyond its control, it being an act of God,
for which defendant was not responsible.

While there is evidence that there was a very high and strong wind,
which was not usual at that season of the year, that is, in the month of
June, but quite usual at the equinoctial period, there is also evidence
that "the wind was blowing a pretty good gale, but witnesses would not
say that it was unusual." So the evidence was not all one way, and in

45—175

the best view of the evidence for the defendant, it was a question for the jury, as to the force of the wind, and as to whether it was usual or unusual, and also as to whether it was an independent or providential cause, for which defendant was not responsible; that is, if such a question could arise in the admitted state of the proof. There was evidence that the fire was caused, in part at least, by defendant's negligence, and when such negligence concurs and cooperates with some other cause in producing the injury, so that the latter is not a sole and independent cause sufficient of itself to have caused the injury, the defendant is liable. We held so in *Ferebee v. R. R.,* 163 N. C., 351, 354, where we said, quoting from Shearman and Redfield on Negligence (6 Ed.), sec. 16: "When an act of God or an accident combines or concurs with the negligence of the defendant to produce the injury, or when any other efficient cause so combines or concurs, the defendant is liable if the injury would not have resulted but for his own negligent act or omission."

And again it was there said: "It was urged for defendant that the evidence tending to show the prevalence of an unusual windstorm on the night in question has not been allowed its proper weight, but, on the facts in evidence, the position cannot avail the defendant. The negligent placing of the boxes having been accepted as the proximate cause of the injury, or one of them, the defendant is not relieved, though an unxpected or unusual storm should have contributed also to the result." And we say here:

The two questions in the case are:

1. Whether there was a failure on defendant's part to use ordinary care in performing some legal duty which it owed to the plaintiff under the circumstances.

2. Whether the failure so to do was the proximate cause of the injury, a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed. *Ramsbottom v. R. R.,* 138 N. C., 39; *Brewster v. Elizabeth City,* 137 N. C.; 392; *Raiford v. R. R.,* 130 N. C., 597; *Hardy v. Hines Lumber Co.,* 160 N. C., 113.

It is not required, in order to constitute proximate cause, that the negligent act should be next in the order of time and place to the injury. It may be the first cause if it operates in unbroken and continuous sequence until the injury occurs.

Shearman and Redfield on Negligence, sec. 26, says: "The proximate cause of an event must be understood to be that which in natural and continuous sequence, unbroken by any new and independent cause, produces that event and without which such event would not have occurred. Proximity in point of time and space, however, is no part of the definition."

· This doctrine of causation with reference to setting out and spreading fires by sparks from an engine was considered fully in *Hardy v. Hines Lumber Co., supra,* to which we refer, it being so much like this case as to control it. We said in that case: "The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. *Scott v. Shepherd* (squib case), 2 W. Bl., 892. 'The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' *R. R. v. Kellogg,* 94 U. S., 469."

There was sufficient evidence to sustain the verdict, and the nonsuit was properly disallowed.

No error.