## L. L. BALCUM AND WIFE v. J. D. JOHNSON.

(Filed 19 March, 1919.)

1. **Negligence—Fires—Faulty Locomotives—Defects—Evidence.**

   In an action to recover damages for the faulty construction of the de-
   fendant's locomotive, operated over its tramroad, in setting out fire to the
   plaintiff's lands, evidence is competent that the defendant's engine threw
   out sparks and live coals while passing the witness one week before the
   occurrence, which set out fires, it appearing that the defendant had only
   one engine, and were it otherwise the evidence should be received when it
   is shown by the defendant's evidence that the engine was in the same con-
   dition on both occasions.

2. **Negligence—Intervening Acts—Damages—Independent Cause—Liability.**

   In order for the act of an intelligent intervening agent to break the
   sequence of events and protect the author of a primary negligence from
   liability, it must be an independent, superseding cause and one that the
   author of the primary negligence had no reasonable ground to anticipate,
   and must be in itself negligent or at least culpable.

3. **Same—Fires—Conflagrations—Back Fires—Causal Connection.**

   Where in an action to recover damages of the defendant caused by fire
   set out by the negligent construction of its locomotive, which dropped live
   sparks and coals as it passed along upon the defendant's tramroad, there
   is evidence tending to show that it caused a conflagration importing men-
   ace to the principal and adjacent property, endeavor to prevent its spread
   by back firing is a method approved and frequently resorted to, wherein
   the conduct of participants is not to be considered or judged with the crit-
   ical scrutiny that may obtain in more deliberate circumstances; and where
   there is evidence that one of the participants started a back fire, in a rea-
   sonable effort to extinguish the fires, an instruction by the court to the
   jury that the plaintiff should recover if they accordingly found the facts
   to be, is a proper one, as the intervening act would not break the causal
   connection with the defendant's original wrong, the same being neither in-
   dependent, improbable or culpable.

4. **Negligence— Fires— Parties— Remainderman— Life Tenant— Restricted Damages—Trials—Appeal and Error.**

The remainderman after a life estate in lands may sue to recover damages to his interest in lands without joinder of the life tenants; and it appearing in this case, on appeal, interpreting the verdict in the light of the language of the issue, the charge of the court, and the exclusion of evidence tending only to show injury to the life estate, that the damages were confined to those of a permanent nature and solely affecting the remainderman, the objection that a recovery had been permitted of the entire damages, without having made the life tenant a party, is untenable.

ACTION tried before *Allen, J.,* and a jury, at September Term, 1918, of SAMPSON.

Plaintiffs, alleging ownership of a designated tract of land, instituted the action to recover damages of defendant for wrongfully setting out fire and burning over the ground by means of a defective engine operated by defendant and his employees over his tramroad, etc.

There was denial of plaintiff's ownership by defendant and of any and all liability in the matter. There was evidence offered by plaintiffs of ownership of land, subject to a life estate therein of one J. A. Balcum, the life tenant not being a party, and also evidence in support of the wrong and damage alleged against defendant. On the part of defendant, there was evidence tending to show that he was in no default by reason of the fire complained of, including testimony to the effect that the fire that caused the damage was in fact and in truth put out by one Tom Wright, who had no relationship with defendant and his work, and for whose conduct defendant was in no way responsible. Evidence in reply by plaintiff that the fire complained of and causing the injury was not started by Tom Wright, and that any fire put out by him was in the reasonable effort to check the spread of the fire started by defendant, and which, under conditions presented, was a neighborhood menace.

On issues submitted, the jury rendered the following verdict:

1. Are the plaintiffs the owners of the land described in the complaint? Answer: "Yes, except as to the life estate of J. A. Balcum."

2. Was the land burned over by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."

3. If so, what damages were done to said land and premises? Answer: "$300."

Judgment on the verdict for plaintiff, and defendant excepted and appealed, assigning errors.

*George A. Smith and Fowler & Crumpler for plaintiffs.*
*Butler & Herring and H. E. Faison for defendant.*

HOKE, J. Defendant noted an exception to the evidence of two witnesses for plaintiff, Martin Hairr and wife, to the effect that one week

before the fire in question the engine operated by defendant over his tramroad, in passing the witness, threw out sparks and live coals from which fire caught. In this connection it was also proved that defendant owned and operated only the one engine over his road, and under our decisions applicable the evidence is competent on the issue. *Whitehurst v. Lumber Co.,* 146 N. C., 588; *Knott v. R. R.,* 142 N. C., 238. In addition it appeared from the evidence of Andrew Robinson, defendant's engineer and a witness in his behalf, that the engine in question was in the same condition on the day of the fire that it had been for six months previous to the fire, and continued to be for six months thereafter. This in any event would render the evidence receivable on the issue. *Blevins v. Cotton Mills,* 150 N. C., 493.

It was further insisted that his Honor erroneously modified certain prayers for instruction by defendant in reference to the conduct of one Tom Wright, who was engaged with others in the endeavor to extinguish or check the spread of the fire, the prayers more directly involved being as follows:

(*a*) "The defendant contends that the fire originated off his right of way and some distance from it, and that he was in no way responsible for this fire, but that from whatever cause originated this fire was held under control and was not permitted to go across the sand-clay road and was not communicated to the plaintiff's land, and that the fire which burned the lands on the east side of the sand-clay road was set out by a third party, viz., one Tom Wright, and this is the fire that eventually burned the plaintiff's land. If this is true, and the jury should so find by the greater weight of the evidence, then the defendant is not liable. Or if you shall find by the greater weight of the evidence that there was another fire set out by Tom Wright on the east side of the sand-clay road, as contended for by the defendant, and you are then in doubt as to whether the original fire or the fire set out by the third party, Tom Wright, burned the plaintiff's land, in that event the defendant is not liable, and the plaintiff could not recover."

(*b*) "If the jury shall find from the evidence that the fire originated between the defendant's railroad track and the county sand-clay road, which runs parallel with the railroad track and several hundred yards east therefrom, and that while those assembled endeavoring to control the fire and while it was a considerable distance from the sand-clay road, which road was about thirty feet wide and free from combustible matter, one Tom Wright, a third party, instead of back firing along the sand-clay road on the west side of the road and next to the fire, strew fire on the opposite side of the road, being the eastern side of the road, with the wind blowing in an easterly direction, this would be an act of negligence for which the defendant would not be liable."

BALCUM v. JOHNSON.

His Honor, both in his general charge and in direct response, told the jury that the positions embodied in those instructions would prevail in their consideration of the case unless the act of Tom Wright referred to was a reasonable act and precaution to prevent the spread of the fire wrongfully started by defendant. It is the well-recognized doctrine that in order for the act of an intelligent intervening agent to break the sequence of events and protect the author of a primary negligence from liability such act must be an independent, superseding cause, one that the author of the primary negligence had no reasonable ground to anticipate, and usually the act must be in itself negligent, or at least culpable. In Barrows on Negligence, the position is stated and commented on as follows: "Where an independent, efficient, wrongful cause intervenes between the original wrongful act and the injury ultimately suffered, the former, and not the latter, is deemed the proximate cause of the injury. An efficient, intervening cause is a new proximate cause, which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the chain of causation remote. It is immaterial how many new elements or forces have been introduced; if the original cause remains active, the liability for its result is not shifted. Thus where a horse is left unhitched in the street and unattended, and is maliciously frightened by a stranger and runs away, but for the intervening act he would not have run away and the injury would not have occurred, yet it was the negligence of the driver in the first instance which made the runaway possible. This negligence has not been superseded or obliterated, and the driver is responsible for the injuries resulting. If, however, the intervening, responsible cause be of such a nature that it would be unreasonable to expect a prudent man to anticipate its happening, he will not be responsible if damage results solely from the intervention." The same principle is satisfactorily treated in Sherman and Redford on Negligence, sec. 31 et seq., and has been very generally approved and applied in the decisions here and elsewhere. Ward v. R. R., 161 N. C., 179; Hardy v. Hines Lumber Co., 160 N. C., 113; Harvel v. Lumber Co., 154 N. C., 254; Harton v. Telephone Co., 146 N. C., 429; Harton v. Telephone Co., 141 N. C., 455; Ins. Co. v. Boon, 95 U. S., 117; R. R. v. Kellogg, 94 U. S., 469; Lane v. Atlantic Works, 111 Mass., 136.

In Harton v. Telephone Co., 141 N. C., 450, the general principle apposite is stated as follows: "The proximate cause of the event must be understood to be that which in natural and continuous sequence, unbroken by any new and independent cause, produces that event, and without which such event would not have occurred. Proximity in point of time or space, however, is no part of the definition. The test by which

to determine whether the intervening act of an intelligent agent which has become the efficient cause of an injury shall be considered a new and independent cause, breaking the sequence of events put in motion by the original negligence of the defendant, is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected."

In *Hardy v. Lumber Co., Walker, J.,* delivering the opinion, quotes from *R. R. v. Kellog,* 94 U. S., at p. 475, as follows: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury."

In *Lane v. Atlantic Works, Colt, J.,* delivering the opinion, states the principle: "In actions of this description, the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the conduct charged, but it will not be considered too remote if, according to the usual experience of mankind, the result should have been apprehended."

It is well understood that when a fire of this kind is started, and under conditions importing serious menace to the principal and adjacent property, it is the custom and assuredly the right of the neighbors to lend a hand and do what reasonable prudence and judgment require to prevent its spread, and that back firing is one of the methods approved and frequently resorted to. It is also recognized that in the presence of an emergency like this the conduct of participants is not to be considered or judged with the critical scrutiny that may obtain in more deliberate circumstance. *McKay v. Ry.,* 160 N. C., 260, and authorities cited. In the present case there was much testimony tending to show that the back firing on the part of Wright was done in the reasonable effort to extinguish the fire wrongfully started by defendant, and with such facts in evidence, and under the principles stated, the intervening act of Wright would not break the causal connection with the original wrong of the defendant, the same being neither independent, improbable nor culpable.

Again, it is objected that a proper consideration of the record and verdict will disclose that plaintiffs, the owners in remainder, subject to the life estate of J. A. Balcum, have recovered for the entire injury done to the property when the life tenant has not been made a party and is in no way concluded by the judgment, but in our opinion this objection must also be disallowed. It is the accepted position here and elsewhere that the owners of property in remainder or reversion after a life estate may recover for a trespass which causes permanent damage to the same and to the extent that it wrongfully affects or impairs the value of their estate or interest, and this without the presence of the life tenant in the

suit. *Cherry v. Canal Co.,* 140 N. C., 422; *Gwaltney v. Timber Co.,* 115 N. C., 579; *Jordan v. Barwood,* 42 W. Va., 312; *Shortle v. Terre Haute, etc., Ry.,* 131 Ind., 3218.

It is further recognized and approved in several of our more recent decisions that a verdict should be "interpreted and allowed significance by a proper reference to the testimony and the charge of the court." *Weldon v. Ry.,* at the present term; *Jones v. R. R.,* 176 N. C., 260; *Grove v. Baker,* 174 N. C., 745; *Reynolds v. Express Co.,* 172 N. C., 487.

Considering the record in view of these principles, it very clearly appears from the language of the issue, the charge of the court and his Honor's rulings in the exclusion of evidence, where it only tended to show injury to the life tenant, that the damages assessed in response to the third issue have been restricted to the injuries that were permanent in their nature and to the extent that they affected the interest and estate of the remaindermen, who are both parties of record.

On careful consideration, we find no reversible error, and the judgment on the verdict is affirmed.

No error.