Civil actions by guests to recover damages for personal injuries resulting from collision between an automobile and a truck alleged to have been caused by the negligence of the drivers of both vehicles, and as the two causes of action arise out of the same state of facts, for convenience, they were consolidated and tried together. Fleming v. Holleman,190 N.C. 449, 130 S.E. 171. *Page 84 
On the evening of 7 February, 1939, soon after dark, Mrs. Bertha Butner was riding with her husband, L. T. Butner, in his Studebaker automobile on the Bethania-Rural Hall Highway and was injured when her husband's car collided with a Ford truck driven by E. A. Spease and in which his mother, Mrs. Myrtie Spease, was riding at the time. Mrs. Myrtie Spease was also injured in the collision. The drivers of the two motor vehicles escaped with only slight injuries. Mrs. Bertha Butner brought suit against E. A. Spease, alleging negligence. L. T. Butner was made a party defendant in this action on motion of the original defendant. Thereafter, Mrs. Myrtie Spease instituted suit against L. T. Butner, alleging negligence. By consent, the two causes were consolidated for trial.
The Bethania-Rural Hall Highway is a bitulithic, black-top road, 15 feet wide, with dirt shoulders 2 1/2 feet in width on either side. It is level and straight where the injury occurred, and the headlights of both vehicles could be seen for a distance of three-quarters of a mile. The direction of the Butner car was southward; that of the Spease truck northward. They collided at the entrance of a side road leading westward to Tobaccoville.
As the Butner car approached the "mouth" of this side road, which was approximately 45 to 50 feet wide, and when the two vehicles were about 40 feet apart, the Spease truck suddenly turned to its left, across the path of the oncoming Butner car, and undertook to enter the side road at its southern edge. The front of the Butner car struck the right side of the truck "just in front of the rear fender," knocked it over a fill and caused it to turn over several times.
L. T. Butner testified: "As we drew closer together, I pulled off my side of the road 12 or 18 inches in order to give the approaching car plenty of room to pass. When I was within approximately 40 feet of the approaching car, without any warning, without any signal, without any sounding of the horn, the driver made a quick left-hand turn, cutting directly in front of my path. I immediately applied my brakes and the next thing I knew we had collided. . . . My car stopped approximately 15 feet south of the center of the intersection. . . . I can't look at a car approaching me at night and tell what speed it is going. . . . There were some marks there for about 26 feet from where I skidded, where I put on my brakes, to the impact. . . . I had no time to direct the direction of my car other than to make a slight turn. It happened about as far from me to where you are right there. . . . I had no idea he was going to make a left turn. . . . The side road is a dirt road. . . . There was no light coming up the side road showing anybody was approaching. . . . I made the statement I was going 45 or 50." *Page 85 
E. A. Spease testified: "I saw the Butner car just before I started to make my turn. I was practically in the act of making the turn when I first saw his car. I had not seen it prior to that time. . . . After I had turned, it seemed as though the car had shot out of the bushes or somewhere right on me. I would say Mr. Butner was going at least 70 to 75 miles an hour. . . . I held my hand out as a signal 10 or 15 feet before I made a turn. . . . I don't think I blew my horn. . . . I couldn't say how far away he was. . . . I misjudged his speed. . . . I guess I would not have turned in front of him if I had not misjudged his speed. . . . It is hard to judge speed at night when a car is coming towards you. . . . The accident occurred on my left-hand side as I was going in the side road. . . . Mr. Butner was right where I thought he was, but I misjudged his speed. . . . I thought I could get across."
The record contains much evidence pertaining to the extent of plaintiffs' injuries.
Upon submission to the jury under separate issues, there was a verdict for the plaintiff in each case. From judgments thereon, the defendants appeal, assigning errors, the defendant Butner relying principally upon his motions for judgments of nonsuit.
after stating the facts as above: The case calls for the application of old and familiar principles to new facts. It is conceded that in one respect the record presents a difficult problem. See Powers v. Sternberg,213 N.C. 41, 195 S.E. 88, and Quinn v. R. R., ibid., 48, 195 S.E. 85. Indeed, the application of the doctrine of insulating the negligence of one by the subsequent intervention of the active negligence of another, as a matter of law, is usually fraught with some knottiness. Smith v. Sink,211 N.C. 725, 192 S.E. 108. However, the principle is a wholesome one, and must be applied in proper instances. Hinnant v. R. R., 202 N.C. 489,163 S.E. 555; Herman v. R. R., 197 N.C. 718, 150 S.E. 361.
Here, the essential facts are not in dispute. The liability of E. A. Spease, the driver of the truck, is established beyond all peradventure. Was his negligence the sole proximate cause of the collision? This is the real question posed by the record. *Page 86 
It must be steadily borne in mind that we are dealing with a fact situation not heretofore presented in any case. Cf. Cunningham v. Haynes,214 N.C. 456, 199 S.E. 627. Two motor vehicles are approaching each other at night on a straight, level stretch of road with the headlights of both visible for a distance of three-quarters of a mile. No other traffic is in sight. When they are within 40 feet of each other at the entrance of a side road, the northbound truck makes a quick left turn, without notice or warning so far as the other can see or hear, and is struck by the southbound car. This turn was made, not at the center, but at the southern edge of the side road, and at a time when the other car had about reached or perhaps passed its northern edge. The driver of the southbound car had no reason to believe that the other would turn into this side road. Guthriev. Gocking, 214 N.C. 513, 199 S.E. 707. The indications were all to the contrary. True, the northbound driver says he gave a hand signal just before making the turn, but it is a matter of common knowledge that a hand signal can seldom be seen by the driver of an approaching car under the circumstances here disclosed, because to him the other driver's hand would be in the shadow of his own lights. Nor would such a signal necessarily indicate to the approaching driver that a perilous left turn across his path was intended. Moreover, both drivers testify to the immediacy of the emergency occasioned by the sudden turn. Ingle v. Cassady, 208 N.C. 497,181 S.E. 562; Poplin v. Adickes, 203 N.C. 726, 166 S.E. 908. Such a situation was not reasonably foreseeable by the driver of the southbound car. Guthrie v. Gocking, supra. He instantly applied his brakes, as the skid marks show, and stopped immediately following the impact. Indeed, the only suggestion of negligence on the part of the driver of the southbound car is the speed at which he was going. The evidence of the defendant Spease in regard to this may be taken with some allowance, because he frankly says that he misjudged the speed of the Butner car; that it is hard to estimate the speed of a car at night when it is coming towards you, and that he was practically in the act of turning when he first saw the car. Nevertheless, conceding the speed of the Butner car to be in excess of 45 miles an hour, and therefore prima facie unlawful, it is manifest that its speed would have resulted in no injury but for the "extraordinarily negligent" act of the defendant Spease — in the language of the Restatement of Torts, sec. 447. Powers v. Sternberg, supra. Hence, the proximate cause of the collision must be attributed to the gross and palpable negligence of the driver of the northbound vehicle. Smith v. Sink,211 N.C. 725, 192 S.E. 108; Beach v. Patton, 208 N.C. 134,179 S.E. 446; Hinnant v. R. R., supra; Herman v. R. R., supra; Burkev. Coach Co., 198 N.C. 8, 150 S.E. 636; Lavergne v. Pedarre
(La.App.), 165 So. 17. *Page 87 
This doctrine of insulating the negligence of one by the subsequent intervention of the active negligence of another really belongs to the definition of proximate cause. Boyd v. R. R., 200 N.C. 324,156 S.E. 507; R. R. v. Kellogg, 94 U.S. 469. The principle is stated in Craver v. Cotton Mills, 196 N.C. 330, 145 S.E. 570, as follows: "While there may be more than one proximate cause, that which is new and entirely independent breaks the sequence of events and insulates the original or primary negligence." Lineberry v. R. R.,187 N.C. 786, 123 S.E. 1; Thompson v. R. R., 195 N.C. 663, 143 S.E. 186.
The pertinent decisions here and elsewhere are in full support of Mr. Wharton's statement in his valuable work on Negligence (sec. 134): "Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured."
The same rule announced by Mr. Justice Strong in R. R. v. Kellogg,supra, regarded as sound in principle and workable in practice, has been quoted with approval in a number of our decisions. He says: "The question always is, Was there an unbroken connection between the wrongful act and the injury — a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence, or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."
Speaking to the application of the doctrine in Balcum v. Johnson,177 N.C. 213, 98 S.E. 532, Hoke, J., dealt with the matter as follows: "The proximate cause of the event must be understood to be that which in natural and continuous sequence, unbroken by any new and independent *Page 88 
cause, produces that event, and without which such event would not have occurred. . . . The test by which to determine whether the intervening act of an intelligent agent which has become the efficient cause of an injury shall be considered a new and independent cause, breaking the sequence of events put in motion by the original negligence of the defendant, is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected."
Again, in Hardy v. Lumber Co., 160 N.C. 113, 75 S.E. 855, Walker,J., quotes from R. R. v. Kellogg, supra, with approval, as follows: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the immediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."
The decisions are all to the effect that liability exists for the natural and probable consequences of negligent acts or omissions, proximately flowing therefrom. The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen. In such case, the original negligence still remains active and a contributing cause of the injury. The test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising. Lane v. Atlantic Works,111 Mass. 136.
The rule is, that if the original act be wrongful, and would naturally prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not in themselves wrongful, the injury is to be referred to the wrongful cause, passing by those which are innocent. Scott v. Shepherd, 2 Bl., 892 (Squibcase). But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission on the part of another or others, the injury is to be imputed to the last wrong as the proximate cause, and not to the first or more remote cause. Cooley on Torts, sec. 50. "In jure non remota causa sed proxima spectatur. It were infinite for the law to judge the causes of causes, and their impulsions one of another; therefore it contenteth it selfe [self] with the immediate *Page 89 
cause, and judgeth of acts by that, without looking to any further degree." Bacon's Maxims, I; Newell v. Darnell, 209 N.C. 254, 183 S.E. 374; Burkev. Coach Co., supra; Ballinger v. Thomas, 195 N.C. 517, 142 S.E. 761.
The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury. Newell v. Darnell, supra; Beach v.Patton, supra; Hinnant v. R. R., supra; Balcum v. Johnson, 177 N.C. 213,98 S.E. 532. "The test . . . is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected." Harton v. Tel. Co., 141 N.C. 455,54 S.E. 299. "The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor. Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." Osborne v. Coal Co., 207 N.C. 545,177 S.E. 796; Beach v. Patton, supra.
Measured by this standard, it would seem that the negligence of the defendant Spease was the sole proximate cause of the collision. But for his intervention, the speed of the Butner car would have resulted in no injury to the plaintiffs. The causal connection between this original negligence and the ultimate damage was broken. It does not appear that the collision, with its attendant suffering and damage, was the natural and probable consequence of Butner's negligence, or wrongful act, and that it ought to have been foreseen in the exercise of reasonable prevision or in the light of the attending circumstances.
It results, therefore, that in each case the demurrer to the evidence by the defendant Butner should have been sustained; and the judgment in the first case against the defendant Spease will be upheld.
On defendant Butner's appeals, Reversed.
On defendant Spease's appeal, No error. *Page 90