---

### THE E. M. PECK.

(District Court, N. D. Ohio, E. D. January 3, 1913.)

No. 2,393.

COLLISION (§ 71*)—VESSEL BREAKING FROM MOORINGS—FAULT.

Evidence considered, and *held* not to sustain the burden of proof resting on the owner of a steamer, which, on a rise in the river where she was tied up for the winter, broke from her moorings and drifted against

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes'

a dredge below, to show that such breaking away was due to inevitable accident or a vis major, but rather to show that she was insufficiently secured or that her caretaker was negligent, and also to show that the collision was the proximate cause of the sinking of the dredge by breaking its lines and driving it against some piles.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*]

In Admiralty. Suit by the L. P. & J. A. Smith Company, owner of Dredge No. 8, against the steamer E. M. Peck; the Calumet Transit Company, claimant. Decree for libelant.

Goulder, Holding & Masten, of Cleveland, Ohio, for libelant.

Warren, Cady & Ladd, of Detroit, Mich., for claimant and respondent.

DAY, District Judge. This is a libel in rem, by the L. P. & J. A. Smith Company, owners of Dredge No. 8, against the steamer E. M. Peck, to recover damages for the sinking of the dredge on January 22, 1904, at Lorain, Ohio, due to the alleged negligence of the Peck in striking the dredge after the former had broken from her moorings.

Some time prior to January, 1904, the Peck was moored on the west bank of Black river, at Lorain, Ohio, in a proper place. Other vessels lay both ahead and astern of the Peck. The Peck's moorings consisted of a heavy anchor chain, 75 to 100 feet long, leading forward from the starboard side to a white oak bank pile, planted in solid ground, some 15 feet back from the edge of the water. Dredge No. 8 was moored in a proper place some 75 to 100 feet to the stern of the Peck. She was about 90 feet long and 30 feet wide. Her forward end was square, the after end being something of a fantail. Upon the forward end was a large derrick or crane projected ahead, and fastened to the sides of the dredge by a wire rope. The river was frozen, and the water was beginning to rise at the time of the breaking away of the Peck. From a concurrence of the testimony, it appears that the water had not risen more than one or two feet at the time the Peck broke away. Between 8 and 9 o'clock in the morning, the gorge began to move down the river towards the Peck. The compressor holding the chain slipped once or twice, permitting the Peck to surge astern. This caused the pile to which the Peck was moored to pull out, and the Peck was carried down the stream. As she passed the dredge, the after end of the cabin scraped along the edge of the dredge's crane, breaking the cabin stanchions and throwing the yawlboat, resting on a cradle, to the deck.

I do not think it is established by the libelant that the Peck hit the dredge, except in so far as the crane of the dredge was hit.

It is claimed by the libelant that the contact between the Peck and the crane of the dredge broke the dredge's lines, and drove her astern through the ice some 75 feet, and forced her starboard quarter upon some old piling along the water's edge, and stove a hole in the bottom about 20 feet forward of the point where the fantail began, in consequence of which the dredge began to leak and finally sank.

From the evidence it appears that the Peck passed the dredge between 8 and 9 o'clock in the morning. At the time the Peck hit the dredge's crane, the water in the river was not more than one or two feet above its normal height, but later on the water rose rapidly, until in the early part of the afternoon it was at least six feet above the normal height.

It is contended by counsel for the Peck that there is no liability in this cause of action, for the reasons: First, that the respondent had exercised every precaution to secure the Peck against the breaking of the gorge, which reasonably prudent men of experience would have exercised under like circumstances; second, that the gorge which broke the Peck loose amounted to an act of God; third, that the contact between the Peck and the dredge was not the proximate cause of the injury to the dredge; but that the sinking of the dredge was due directly to a subsequent intervening cause, namely, the rise in the water which floated the dredge over the piling, and the failure on the part of those in charge of the dredge to slack the lines seasonably and permit it to float out as the water receded.

From the record I think it is apparent that the Peck broke loose by reason of the compressor slipping and permitting the chain to become slack and then tighten, thus breaking or loosening the pile to which the Peck was moored. This was the fault either in the construction of the compressor or more probably in the conduct of the caretaker of the Peck. The law is well established in cases of this sort in The Louisiana, 3 Wall. 164, 18 L. Ed. 85, wherein the Supreme Court says:

"The collision being caused by the Louisiana drifting from her moorings, she must be liable for the damages consequent thereon, unless she can show affirmatively that the drifting was the result of inevitable accident, or a vis major which human skill or precaution and a proper display of nautical skill could not have prevented."

This same principle has been applied by the Court of Appeals of this circuit to a case of a boat breaking away during a flood, where the original mooring was proper, but it did not appear that the shipkeeper properly adjusted the moorings as the water rose. The Wm. E. Reis, 152 Fed. 673, 82 C. C. A. 21.

Granting that the Peck broke loose by reason of the improper conduct of the shipkeeper, the inquiry naturally is, under this record, whether or not the breaking of the Peck from her moorings was the proximate cause of any injury sustained by the dredge. The question of proximate cause often arises. As was said by the Court of Appeals of this jurisdiction, in the case of Slyfield v. Penfold, 66 Fed. 364, 13 C. C. A. 514:

"This is generally a question of fact to be determined in each case by the circumstances attending the injury, and the conditions in which it happened. In Railway Company v. Kellogg, 94 U. S. 469 [24 L. Ed. 256], it is said: 'The primary cause may be the proximate cause of a disaster, though it may operate through successive instrumentalities. * * * The question always is: Was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? * * * The inquiry therefore must always be whether

there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury.'"

The dredge was moored with a new seven-inch line forward and a number of other breastlines. The contact of the boom or crane of the dredge with the Peck broke several stanchions and scraped the top of the cabin of the Peck.

There is a great variance in the testimony of witnesses as to whether or not the contact of the Peck with the crane of the dredge broke the fastenings of the dredge, or whether it did not. Much of the testimony in this case on behalf of the Peck was taken some six years after the occurrence. Making due allowance for this, and weighing the testimony, I think that from all of the probabilities the contact of the Peck and the dredge was sufficient to break the lines on the dredge and force the dredge back onto the pilings and break a hole into the hull of the dredge which subsequently caused the sinking of the dredge.

To say that the dredge would have sank had there been no contact would be to deal in speculation.

The law being so well established in cases of this kind, and it having been shown that the Peck was in fault in reference to her moorings, and that the contact took place between the Peck and the dredge, I reach the conclusion that the Peck was at fault.