## DAWSON v. GALVESTON, H. & S. A. RY. CO. (No. 1421.)*

(Court of Civil Appeals of Texas. El Paso. March 1, 1923. Rehearing Denied March 22, 1923.)

Master and servant ⚌285(5), 286(3, 28)— Directed verdict for defendant held proper, where employé injured by examining explosive picked up by fellow employé.

In car repairer's action for injuries from an aero bomb or cap, which exploded when he was examining it, on evidence tending to show that the explosive was lost from a bad order car of explosives when its contents were transferred in the railroad yard to another car; that it had been picked up by yard employés and placed in a trash pile; that it was found there by a fellow car repairer, who pulled off a tape wound round the cap and brought it to plaintiff, who was injured when he struck it with a hammer endeavoring to take it apart, held, that neither the issues of negligence in not furnishing a safe place to work, nor negligence in transporting the explosives without first preparing it so that it could not be exploded, nor the issue of proximate cause, should have been submitted to the jury; hence directed verdict for defendant was proper.

Appeal from District Court, Terrell County; Joseph Jones, Judge.

Action by Ben F. Dawson against the Galveston, Harrisburg & San Antonio Railway Company. From judgment for defendant, plaintiff appeals. Affirmed.

Whitaker & Peticolas, of El Paso, for appellant.

W. B. Teagarden, of San Antonio, Boggess, Smith & LaCrosse, of Del Rio, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

### Statement of Case.

WALTHALL, J. This suit was brought by appellant, Ben F. Dawson, against the Galveston, Harrisburg & San Antonio Railway Company, for damages for personal injuries alleged to have been sustained by him by reason of an explosion occurring in the company's railroad yards and which Dawson alleged occurred on account of the negligence of the railway company, proximately causing his injuries complained of.

Appellant was an employé of appellee, and, while on duty as a car inspector in the railroad yard of appellee at Sanderson, Tex., he was seriously and permanently injured and damaged by an explosion of what is designated by the witnesses as an aero bomb, or aero bomb cap, which he struck with his hammer while holding the bomb or cap in his hand. Appellant's complaint is in effect that the bomb or cap was left on the ground in the railroad yard adjacent to where he

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction April 18, 1923.

worked as car inspector, where a carload of explosives was previously being transferred in the yard from one car to another car. Appellant alleges that the leaving of the explosive in the yard adjacent to where he worked was actionable negligence because: (1) It was a failure to supply him a safe place to work. (2) It was the maintenance of a public and private nuisance. (3) That it was negligence to transport such explosives, in the first place, without first preparing them so that they could not be exploded. (4) In allowing the explosives to be scattered over the yard without warning him of the danger, and which warning was not given.

The defenses pleaded were a general denial and a special answer, asserting that, if in fact the explosive was lost from a car in the railroad yard it had been removed to a place of safety and every duty to appellant discharged in this respect, and that, acting not within the scope of their authority, and without its authority, or the authority of any one thereto authorized, the explosive was brought back into the yard by another fellow employé, and that the other employé and appellant, for their own private purposes, handled, inspected, and tampered with the explosive, and that appellant, though warned of the danger by his fellow employé, negligently, and to gratify his own curiosity and purposes, tampered with the explosive, and negligently struck it with a hammer, thereby causing it to explode, and that his injury resulted from his own negligence alone, or that his own negligence in striking the explosive at least contributed to the accident causing his injury.

The trial before a jury resulted in an instructed verdict in favor of appellee, and judgment likewise was so entered. The case comes to this court under one assignment of error, and discussed under several propositions germane thereto, all to the effect that the court erred in instructing the jury to return a verdict for the defendant company.

The material facts on the merits of the case are as follows: At the time he was injured, Ben F. Dawson was employed by appellee as car repairer in the railroad yard at Sanderson, Tex. His duties were to look incoming trains over; send cars needing repairs to the rip track for repairs as light repairing on cars; if he saw any company material or thing of value lying around in the railroad yard he was to pick it up and put it in the place where such things were kept by the company. As to what Dawson meant by things of value, he testified:

"If we took off a nut or a bolt, we were supposed not to throw it away, and if we happened to find one on the yard where somebody had dropped it, or thrown it down, why we would pick it up and put it at the place where they kept them, and they had a place for them. That is what I meant by Mr. McConnell's instructions, picking up things of value."

W. C. Durbon was a car repairer for the same company, and on duty at the same time and with like duties as Dawson. At the time of the accident causing the injuries to Dawson, Durbon and Dawson had just finished some work on a west-bound freight train to states west, which trains, as a rule, carried freight to New Mexico, Arizona, and California. They were next going to inspect a west-bound through passenger and mail train carrying passengers and mail to states west, and which train was soon to arrive, and they were then going to meet that train. Durbon had just gone to the west in the yard to open a switch to put a car in on the repair track, and, after doing so, and while on his return, he discovered what appeared to him as the butt end of a buggy whip or a small flash light battery, but later proved to be the explosive in question. He picked it up and went on toward the depot, in the meantime pulling or slipping from around the instrument a tape wrapped around the cap. That had been accomplished before he reached Dawson. On reaching Dawson, Durbon said: "Ben did you ever see a hand grenade?" Dawson answered, "Yes; lots of them." Durbon said: "Is this one?" Dawson replied: "No; it is a flash light battery." They then discussed the appearance and mechanism of a flash light battery. Dawson then said: "Let me see it," and it was given to him. Dawson, examining it, remarked: "No; it is not a flash light battery; it is an electrical attachment of some kind." Durbon remarked: "Yes; it looks like one, but I don't know." Dawson said: "Let's take it apart." Durbon remarked (the words not quoted in the record) that he didn't like to fool with it, it might be dangerous or an explosive of some kind, when Dawson said: "No; it is an electrical attachment of some kind. This is what makes the contact, on that point." Durbon said: "Yes; it looks like it, but I don't believe I would fool with it." Dawson shook it, and it seemed loose in the case. Dawson had a small hammer and with it he tapped it two or three light taps, and it did not come out. Dawson remarked: "It comes out through the other way," and he turned it over and tapped it again, when it exploded with a loud report.

During the above, Durbon and Dawson were walking along in the yard and had reached a point near the depot. The above conversation is a statement from Durbon's evidence. Dawson's evidence is slightly different as to the conversation, but we think not materially so. He remembered tapping the explosive only once, when it exploded. He said that his purpose in tapping the instrument with his hammer "was to force it out there, so I could see how it was made— to examine it. That was my purpose. I examined it before I tried to force it out." Dawson said that Durbon did not tell him

not to tap the instrument, or suggest that it might explode, or that it was dangerous.

The witnesses, in testifying as to localities, testified from a map which we adopt without incorporating it here, as a part of our findings of fact.. Durbon picked up the explosive from "a lot of stuff" some 50 feet west of the car shop and about same distance from the Y track. Where the explosive was picked up was a wide open space, used principally by the company on which to dump material, stuff and trash from the yard. It was on the right of way. The place also had the appearance to Dawson of being a pile dumped from a wheel barrow, with trash, cordwood, chips, fire clay bombs, pieces of broken dummies.

On July 3d, prior to the accident in question on July 19, 1921, a car containing explosives and so marked, reached Sanderson, and on account of bad order of the car was transferred to the repair track, and its contents transferred from the bad order car to another car. The bad order car contained similar explosives in boxes and crates. Some of the boxes and crates were broken, and their contents scattered over the floor of the car. The explosives found on the floor of the car were picked up and returned to the boxes. Some three or four instruments similar in appearance to the explosive in question were picked up on the railroad yard; some of them were picked up at the place where the transfer of the explosives took place, and on the day of the accident to Dawson, and others prior thereto.

## Opinion.

The question presented is: Do the facts show, as a matter of law, that Dawson's injuries resulted proximately from any actionable negligence on the part of the company? We think it would be a reasonable and fair deduction from the facts shown, and the case is presented and discussed by both sides on that theory, that the explosive causing Dawson's injuries came out of the car containing explosives, and was lost out of said car on the 3d of July, when the boxes and crates containing the explosives were transferred from the condemned or bad car to another car. It might also be a reasonable deduction to be drawn from the evidence and facts shown, and seems to conform to the company's theory of the case, that, in cleaning up the yard, employés of the company had taken the explosive from some portion of the yard where it had been dropped or fallen and placed it in the trash pile where it was found and picked up by Durbon. Except as based on the above two deductions, it does not otherwise appear that the explosive causing the injuries to Dawson was ever in the possession of, or handled by, the company, or was ever in its yards, other than it was found in the trash pile, where the company dumped the trash taken from its yard. And only upon the above deductions would there be any causal connection between the explosives in the car or found in the yard, and the explosive which caused Dawson's injuries. Then, assuming that the explosive causing the injury to Dawson was brought by the company into its yard in a defective car and in the transfer of the explosives from one car to another, this particular explosive was lost out of one or the other of the two cars, and was placed by the company where it was found and picked up by Durbon, are the facts such as to require the issues of actionable negligence and proximate cause to be submitted to the jury? We have concluded that they are not, and that the court was not in error in giving the instruction complained of.

Dawson was not injured by any of the explosives while in the car, nor by any found in the yard, except the one picked up from the trash pile by Durbon. If the company had fulfilled its duty to furnish Dawson a reasonably safe place to work by the removal of the explosive outside of the yard where it was found and picked up by Durbon, the company would be absolved from liability to Dawson on the negligence assigned that it did not furnish him a reasonably safe place to work. Dawson did not receive his injuries from the explosive as it lay on the trash pile to where it had been removed by the company. We think reasonable minds would hardly disagree, under the facts and circumstances shown by the record, that by the removal of the explosive to where it was found and picked up by Durbon, Dawson was furnished a reasonably safe place to work, and the court was not in error in not submitting that assigned act of negligence to the jury. The issue would be different from the one here presented, if Dawson's duty to the company called him to the place where the explosive had been placed by the company, and, while in the discharge of any service he owed the company, the explosion had then and there occurred and he was injured thereby. But such are not the facts.

This brings us to the question as to the liability of the company to Dawson for the injury received from the explosion after Durbon had picked up the explosive from where it had been placed by the company in the trash pile, and had brought it back to the place where Durbon delivered it to Dawson. The first question presented under this branch of the case is, was the act of Durbon in picking up the explosive from where it had been placed and delivering it to Dawson an act in his line of service to the company, and from the result of which the company would be liable, or was Durbon's act in doing so an intermediate and independent act or cause, disconnected from the primary fault, self-operating, and which act of Durbon itself produced the injury to Dawson, and for which the company would not be

liable to Dawson? If the uncontroverted evidence shows a complete defense as a matter of law, or if reasonable minds would not disagree as to the issues of negligence and proximate cause on this branch of the case, the court is not in error in not submitting the issues of negligence and proximate cause to the jury.

The evidence does not show or even suggest that Durbon picked up the explosive with the view of returning it to a place kept by the company for articles picked up from the yard. Nor does the evidence suggest that Dawson received the explosive from Durbon with the view of returning it to a place kept by the company for things picked up from the yard. If the evidence suggests the purpose of Durbon in picking up the explosive, it was more because of its peculiar appearance than of any value it had. It looked to him like the butt end of a buggy whip or a small flash light battery. Durbon testified: "The reason I came to pick it up, I guess, was curiosity to see what it was more than anything else. More than anything else, it was out of curiosity." One of the negligent acts assigned is that the explosive was being transported without first preparing it so that it could not be exploded. The explosion did not take place in transportation, and the uncontroverted evidence of Durbon in speaking of the explosive was that "on the other end it had a cap on it, and a piece of tape wound round the cap. I just pulled that tape, or slipped the end off. * * * I did that before I reached Dawson." The record does not show what preparation or covering was necessary to prevent explosion while in transportation, more than the tape or covering found on the one that caused the injury to Dawson. While other explosives, similar in kind to the one here were found in the yard, and many others in boxes and crates, in the bad car, some picked up from the floor of the bad car and put in the uncovered boxes containing similar explosives, the evidence does not show any explosion other than the one that injured Dawson, and that occurred after Durbon had removed the tape from the cap, and then only when Dawson tapped it with his hammer.

Under the facts as disclosed by the evidence, we think the court was not in error in not submitting the assigned negligence of transporting the explosive without first preparing it so that it could not explode.

Only one other feature of the case seems necessary to be considered, and we consider that only because presented and discussed, by briefs and orally. It is insisted by the appellee company that, if in fact the company had not fully discharged its duty to Dawson by removal of the explosive to the place where it was picked up by Durbon, and for that reason actionable negligence still remained, such negligence was not the proximate cause of the injury to Dawson, as shown by the uncontroverted facts, and as a matter of law, in that Durbon, acting not within the scope of any duty he owed the company, but out of idle curiosity, picked up the explosive and brought it on the yard and delivered it to Dawson, and that Dawson, likewise, through curiosity as to the construction of the explosive, and, of his own volition and not in any service he owed the company, attempted to take the explosive apart and in doing so struck it with his hammer and thereby caused it to explode. It is contended that such acts of Durbon, and of Dawson combined, and of each independent of the other, severed the causal connection between the company's negligence, if there was any, and the accident causing the injury; and that the act of Dawson alone, by reason of the facts, was the proximate cause of his injury.

It seems to us that neither Durbon, in picking up the explosive and returning it to the yard and delivering it to Dawson, nor Dawson in receiving it from Durbon and attempting to take the explosive apart, and tapping it with his hammer, was in any way acting for the company, or in doing so was in the discharge of any duty either owed the company. Durbon was a responsible human agency, not a mere instrumentality, not a mere involuntary unconscious, irresponsible agency acting as a link in a chain of causation. As said by the Supreme Court in M. & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, there is in every transaction a succession of events, more or less dependent upon those preceding, and the question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? While the rule is difficult of application, it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. It seems to us that the removal of the explosive from the trash pile, where it had been placed by the company, and carrying it again upon the yard by Durbon, and the handling of it by Durbon and Dawson, and the manner of their doing so, were the sole intermediate causes disconnected from the primary fault, and self-operating, which produced the injury.

In view of the entire record in the case, we have concluded that the court was not in error in instructing the verdict.

The case is affirmed.